IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STATE OF TEXAS, )
Office of the Attonery General )
209 W. 14th Street )
Austin, Texas 78701, )
 )
      Plaintiff, )
 )
v. )
 )
UNITED STATES OF AMERICA )
and ERIC H. HOLDER, JR. in his )
official capacity asAttorney General )
of the United States, )
 )
      Defendants. )

**COMPLAINT FOR DECLARATORY JUDGMENT PURSUANT TO SECTION 5
OF THE VOTING RIGHTS ACT OF 1965 AND
REQUEST FOR THREE-JUDGE COURT**

The State of Texas, by and through its Attorney General Greg Abbott, seeks a declaratory judgment that its recently enacted redistricting plans for the State Board of Education (the SBOE Plan), the Texas House of Representatives (the House Plan), the Texas Senate (the Senate Plan), and the United States House of Representatives (the Congressional Plan) fully comply with Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c (Section 5). The State's redistricting plans have neither the purpose nor will they have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority. This complaint is filed under the assumption that Section 5 complies with the United States Constitution. The State reserves all applicable legal claims in light of the U.S. Supreme Court's

decision in *Northwest Austin Mun. Util. Dist. No. One v. Holder*, 129 S.Ct. 2504, 2511-13 (2009) (raising serious questions regarding the constitutionality of Section 5), and pending this Court's decisions in *Shelby County, Ala. v. Holder*, No. 10-00651, (D.D.C.), and *Laroque v. Holder*, No. 10-00561 (D.D.C.). *See Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988) ("A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them.").

## PARTIES

1. Plaintiff, the State of Texas, is a state of the United States and brings this action on behalf of itself and its citizens. Texas is subject to the preclearance requirements of Section 5 of the Voting Rights Act of 1965, as amended and codified at 42 U.S.C. § 1973c.

2. Defendants are the United States of America and Eric H. Holder, Jr., in his official capacity as Attorney General of the United States. Attorney General Holder is principally responsible for administering Section 5 of the Voting Rights Act and is a necessary party to these proceedings.

## JURISDICTION AND VENUE

3. This action is brought pursuant to Section 5 of the Voting Rights Act, under which this Court is authorized to declare Plaintiff's redistricting plans compliant with Section 5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

4. Venue is proper in this Court pursuant to Section 5 of the Voting Rights Act. 42 U.S.C. § 1973c.

**FACTS**

5. According to the 2010 Census data, Texas' population increased to 25,145,561, entitling it to 36 representatives in the United States House of Representatives (an increase of 4).

6. The population growth in Texas resulted in the malapportionment of preexisting electoral districts in the SBOE, the House, the Senate, and the Congressional Plans.

7. Consequently, the 82nd Texas Legislature recently reapportioned the electoral districts for the SBOE, the House, the Senate, and the United States House of Representatives.

8. This is a lawsuit for judicial preclearance under 42 U.S.C. § 1973c (Section 5 of the Voting Rights Act) and is entitled to review by a three-judge court.

9. Simultaneous with the filing of this action, Plaintiff has made a complete, but informal, submission—for all four redistricting plans—to the U.S. Department of Justice (DOJ) in order to facilitate and expedite disposition of this matter (the Submission). The Submission tracks and mirrors the DOJ's administrative pre-clearance process. A copy of the Submission is attached. Attachment 1.

## State Board of Education Redistricting Plan

10.     Texas' State Board of Education (SBOE) consists of 15 members, each of whom represents a single-member district.

11.     After the release of the 2010 Census data, the 82nd Legislature reapportioned the SBOE districts to equalize population.

12.     The SBOE Plan, H.B. 600, was passed by the Legislature on May 6, 2011 and became law on May 18, 2011. The SBOE Plan will become effective on August 29, 2011. Maps depicting the former and revised SBOE districts are attached. Attachment 2.

13.     On July 19, 2011—as explained above—Texas provided to the DOJ all of the documents and data necessary for the Attorney General to confirm that the SBOE redistricting plan complies with Section 5 and is entitled to preclearance. A copy of the State's submission is attached to this Complaint and incorporated herein for the Court's convenience.

14.     The Submission explains that the SBOE redistricting plan, as compared to its previous benchmark, maintains or increases the ability of minority voters to elect their candidate of choice in each district protected by Section 5.

15.     Specifically, the benchmark plan (i.e., the preexisting SBOE districting plan) included three districts (Districts 1, 2 and 3) where Hispanic voters were able to elect their candidate of choice and two districts (Districts 4 and 13) where African-American voters were able to elect their candidate of choice. The Plan maintains those five districts while enhancing the Hispanic

Voting Age Population (HVAP), the Hispanic Citizen Voting Age Population (HCVAP ) and the Spanish Surname Voter Registration (SSVR ) in both Districts 1 and 3.

### State House of Representatives Redistricting Plan

16.     The Texas House of Representatives (the House) is divided into 150 single-member districts.

17.     After the release of the 2010 Census data, the 82nd Legislature was required by law, TEX. CONST. art. 3, § 26, to reapportion the Texas House districts.

18.     The House Plan, H.B. 150, was passed by the Legislature on May 23, 2011 and became law on June 17, 2011. Maps depicting the former and current House districts are attached. Attachment 3.

19.     The House Plan will become effective on August 29, 2011.

20.     On July 19, 2011—as explained above—Texas informally provided the DOJ all of the documents and data necessary for the Attorney General to confirm that the House redistricting plan fully complies with Section 5 and is entitled to preclearace. A copy of the Submission is attached to this Complaint and incorporated herein for the Court's convenience.

21.     The Submission explains that the House Plan, as compared to its previous benchmark, maintains or increases the ability of minority voters to elect their candidate of choice in each district protected by Section 5.

22.     Specifically, as detailed in the chart below, the current House redistricting plan maintains or increases the number of districts at or above

key thresholds for relevant metrics used to determine whether a minority voting population is able to elect its candidate of choice:

|  | BENCHMARK | HB 150 |
|---|---|---|
| HVAP[1] (greater than 60%) | 30 | 30 |
| HCVAP[2] (greater than 50%) | 30 | 30 |
| SSVR[3] (greater than 50%) | 29 | 30 |
| BVAP[4] (greater than 40%) | 11 | 12 |

State Senate Redistricting Plan

23.   The Texas Senate is divided into 31 single-member districts.

24.   After the release of the 2010 Census data, the 82nd Legislature was required by law, TEX. CONST. art. 3, § 25, to reapportion the Senate districts.

25.   The Senate Plan, S.B. 31, was passed by the Legislature on May 23, 2011 and became law on June 17, 2011. Maps depicting the former and current Senate districts are attached. Attachment 4.

26.   The Senate Plan will become effective on August 29, 2011.

27.   On July 19, 2011—as explained above—Texas informally provided the DOJ all of the documents and data necessary for the Attorney General to confirm that the Senate redistricting plan fully complies with Section 5 and is

---

[1] Hispanic Voting Age Population.
[2] Hispanic Citizen Voting Age Population.
[3] Spanish-Surname Voter Registration.
[4] Black Voting Age Population.

entitled to preclearance. A copy of the Submission is attached to this Complaint and incorporated herein for the Court's convenience.

28. The Submission explains that the Senate Plan, as compared with its previous benchmark, maintains or increases the ability of minority voters to elect their candidate of choice in each district protected by Section 5.

29. Specifically, there are seven Senate districts (Districts 6, 19, 20, 21, 26, 27 and 29) in the benchmark map and in the Senate Plan with a Hispanic Voting Age Population (HVAP) greater than 60%. Additionally, there are two districts (Districts 13 and 23) in the benchmark and the Senate Plan with a Black Voting Age Population (BVAP) of over 40%. All nine of these districts will continue to elect the minority voters' candidate of choice under the Plan.

## Congressional Redistricting Plan

30. According to the 2010 Census data, Texas' population increased to 25,145,561, entitling the State to 36 representatives in the U.S. House of Representatives (an increase of 4).

31. Due to this growth in population and the apportionment of four additional seats to Texas, the State was required to reapportion its congressional districts after the release of the 2010 Census data.

32. The Legislature adjourned its regular session on May 30, 2011 without reapportioning Texas' congressional districts.

33. A special session was convened on May 31, 2011, the Legislature passed the Congressional Plan, S.B. 4, on June 24, 2011, and the Plan was

signed into law on July 18, 2011. Maps depicting the former and current congressional districts are attached. Attachment 5.

34. On July 19, 2011—as explained above—Texas informally provided the DOJ all of the documents and data necessary for the Attorney Genral to confirm that the Congressional Plan fully complies with Section 5 and is entitled to preclearance. A copy of the Submission is attached to this Complaint and incorporated herein for the Court's convenience.

35. The Submission explains that the Congressional Plan, as compared with its previous benchmark, maintains or increases the ability of minority voters to elect their candidate of choice in each district protected by Section 5.

36. With regard to the African-American communities, the Congressional Plan increases by one the number of congressional districts with a Black Voting Age Population (BVAP) of over 40% and also contains one district with 37.6% BVAP.

37. In addition, there are seven majority-minority districts both in the benchmark map and in the Congressional Plan with a Hispanic Voting Age Population (HVAP) greater than 60% (and one new seat with an HVAP over 50%).

## COUNT I

38. The allegations in Paragraphs 1-15 are reincorporated here.

39. The SBOE Plan does not retrogress and "neither has the purpose nor will have the effect of denying or abridging the right to vote on account of

race or color" or membership in a language minority. 42 U.S.C. § 1973c. In all respects, it complies with Section 5 of the Voting Rights Act.

40. Plaintiff is entitled to a judgment that the SBOE Plan fully complies with Section 5 of the Voting Rights Act and may be implemented immediately.

## COUNT II

41. The allegations in Paragraphs 1-9 and 16-22 are reincorporated here.

42. The House Plan does not retrogress and "neither has the purpose nor will have the effect of denying or abridging the right to vote on account of race or color" or membership in a language minority. 42 U.S.C. § 1973c. It therefore complies with Section 5 of the Voting Rights Act.

43. Plaintiff is entitled to judgment that the House Plan fully complies with Section 5 of the Voting Rights Act and may be implemented immediately.

## COUNT III

44. The allegations in Paragraphs 1-9 and 23-29 are reincorporated here.

45. The Senate Plan does not retrogress and "neither has the purpose nor will have the effect of denying or abridging the right to vote on account of race or color" or membership in a language minority. 42 U.S.C. § 1973c. It therefore complies with Section 5 of the Voting Rights Act.

46. Plaintiff is entitled to judgment that the Senate Plan fully complies with Section 5 of the Voting Rights Act and may be implemented immediately.

## COUNT IV

47.     The allegations in Paragraphs 1-9 and 30-37 are reincorporated herein.

48.     Texas' Congressional Plan does not retrogress and "neither has the purpose nor will have the effect of denying or abridging the right to vote on account of race or color" or membership in a language minority. 42 U.S.C. § 1973c. It therefore complies with Section 5 of the Voting Rights Act.

49.     Plaintiff is entitled to judgment that the Congressional redistricting plan fully complies with Section 5 of the Voting Rights Act and may be implemented immediately.

## DEMAND FOR JUDGMENT

Plaintiff respectfully requests the following relief from the Court:

A. Convene a three-judge court pursuant to 42 U.S.C. § 1973c;

B. Enter declaratory judgment that the SBOE, House, Senate, and Congressional redistricting plans neither have the purpose nor will have effect of denying or abridging the right to vote on account of race, color, or membership in a language minority and otherwise fully comply with Section 5 of the Voting Rights Act.

C. Enter a declaratory judgement that the SBOE, House, Senate, and Congressional redistricting plans may be implemented immediately.

D. Grant Plaintiff such other and further relief as may be proper and appropriate.

Dated:   July 19, 2011            Respectfully Submitted,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

BILL COBB
Deputy Attorney General for Civil Litigation

DAVID C. MATTAX
Director of Defense Litigation

_____
DAVID SCHENCK
Deputy Attorney General for Legal Counsel
J. REED CLAY, JR.
Special Assistant and Senior Counsel
to the Attorney General

209 W. 14th St.
PO Box 12548
Austin, TX 78711-2548
(512) 936-1342