IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____  )
                                           )
STATE OF TEXAS,                            )
                                           )
          Plaintiff,                       )
                                           )
     v.                                    )
                                           )
UNITED STATES OF AMERICA;                  )
ERIC H. HOLDER, JR., in his official       )
Capacity as Attorney General of the        )
United States,                             )
                                           )
          Defendant,                       )
                                           )
     and                                   )
                                           )
SENATOR WENDY DAVIS,                       )
REPRESENTATIVE MARC VEASEY,                )
JOHN JENKINS, VICKI BARGAS,                )
And ROMEO MUÑOZ,                           )
                                           )
          Defendant-Intervenors            )
                                           )
     And                                   )
                                           )
TEXAS STATE CONFERENCE OF                  )
NAACP BRANCHES (1107 East 11th Street,     )
Suite A, Austin, Texas 78702),             )
JUANITA WALLACE (1409 S. Lamar Street,     )
Loft 341, Dallas TX, 75215),               )
REV. BILL LAWSON (4042 Glen Cove Drive,    )
Houston TX, 77021),                        )
HOWARD JEFFERSON (4402 Nenana Drive,       )
Houston TX, 77035),                        )
ERICKA CAIN (6434 Brookhaven Trail,        )
Fort Worth TX, 76133),                     )
NELSON LINDER (1807 Rhodes Road, Apt. 2,   )
Austin, TX 78721), and                     )
REGINALD LILLIE (16611 Canterra Way,       )
Houston, TX 77095),                        )
                                           )
          Proposed Defendant-Intervenors.  )
_____  )

## MOTION FOR LEAVE TO INTERVENE AS DEFENDANTS

The Texas State Conference of NAACP Branches, Juanita Wallace, Rev. Bill Lawson, Howard Jefferson, Ericka Cain, Nelson Linder, and Reginald Lillie (hereinafter, collectively "Proposed Defendant-Intervenors") respectfully move the Court for leave to intervene in this action as of right, pursuant to Federal Rule of Civil Procedure 24(a)(2). Movants have a direct interest in the subject matter of this action and the disposition of the action may impair or impede their ability to protect their rights.  The existing parties do not adequately represent the interests of the Proposed Defendant-Intervenors. Alternatively, movants respectfully request leave to intervene permissively, pursuant to Fed. R. Civ. P. 24(b).  The defenses asserted by Proposed Defendant-Intervenors have questions of law or fact in common with the main action and granting this motion will not unduly delay or prejudice the adjudication of the claims of the original parties.

As grounds for this motion, and as detailed in the supporting Memorandum in Support of Motion for Leave to Intervene, Proposed Defendant-Intervenors show the following:

1. Plaintiff State of Texas filed this action on July 19, 2011, to obtain preclearance pursuant to Section 5 of the Voting Rights Act for its congressional, state legislative, and state board of education redistricting plans.

2. On July 21, 2011, Wendy Davis, Marc Veasey, John Jenkins, Vicki Bargas, and Romeo Muñoz moved to intervene in this action.  This Court granted that motion on August 17, 2011.  On August 17, 2011, The Mexican American Legislative Caucus of the Texas House of Representatives filed a motion to intervene.  This Court has not yet decided that motion.

3. On August 17, 2011, this Court conducted a telephonic scheduling conference in which it instructed the Defendant to submit its answer By September 19, 2011.  It

also set September 14 as the deadline for Plaintiff to file its Motion for Summary Judgment.

4. This motion is being filed only a little over a month since the complaint was filed, just a few days after this Court granted the motion to intervene of other intervenors, and several weeks before the Defendants must submit an answer to the complaint. Proposed Defendant-Intervenors can comply with these deadlines without causing any delay in litigation.  Thus, intervention is timely and would not delay or prejudice the adjudication of the rights of the original parties.

<u>Proposed Defendant-Intervenors</u>

5. The Texas State Conference of NAACP Branches is the oldest and one of the largest, most significant organizations promoting and protecting the civil rights of African-Americans in Texas. It is a non-profit membership organization with over sixty branches across the state and members in almost every county of Texas. Since its inception, the organization has been involved in numerous voting rights and redistricting cases in the state.  In cases involving state-wide redistricting plans, the Texas-NAACP has proposed remedies, such as redistricting plans and maps that have been adopted by the courts.  The Texas-NAACP, its branches, and its members have also presented testimony to legislative bodies on various state and local election schemes and redistricting plans.

6. The Texas State Conference of NAACP Branches, with its offices at 1107 East 11th Street, Suite A, Austin, Texas 78702, includes segments of African-American communities from the entire State of Texas which are not currently represented in this matter and should be considered by the court for a complete and necessary understanding of the effects of the redistricting plans passed by the Texas Legislature.

7.   Proposed Defendant-Intervenor Juanita Wallace resides at 1409 S. Lamar Street, Loft 341, Dallas TX, 75215.  An African-American citizen and resident of Dallas County, she is the President of the Dallas Branch of the NAACP and is a registered voter.  She lives in current Congressional District 30, current State Senate District 23, and current State House District 100.  Under the state's new redistricting plans, she will be in Congressional District 30, State Senate District 23, and State House District 100.

8.   Proposed Defendant-Intervenor Rev. Bill Lawson resides at 4042 Glen Cove Drive, Houston TX, 77021.  An African-American citizen and resident of Harris County, he is a member of the NAACP and a registered voter.  He is Pastor Emeritus of Wheeler Avenue Baptist Church, and both a long-time civil rights leader and an advocate for the indigent and homeless in Houston.   He lives in current Congressional District 18, current State Senate District 13, and current State House District 147.  Under the state's new redistricting plans, he will be in Congressional District 18, State Senate District 13, and State House District 147.

9.   Proposed Defendant-Intervenor Howard Jefferson resides at 4402 Nenana Drive, Houston TX, 77035.  An African-American citizen and resident of Harris County, he is a member of the Texas State Conference of NAACP Branches and is a registered voter.  He lives in current Congressional District 7, current State House District 146, and current State Senate District 13 (Senator Rodney Ellis is elected from this district).   Under the state's new redistricting plans, he will be in Congressional District 18, State House District 146, and State Senate District 13 .

10.  Proposed Defendant-Intervenor Ericka Cain resides at 6434 Brookhaven Trail, Fort Worth TX, 76133.  She is a member of the Texas State Conference of NAACP Branches and is an African-American registered voter.  She lives in current

Congressional District 12, current State House District 97, and current State Senate District 10.

11. Proposed Defendant-Intervenor Nelson Linder resides at 1807 Rhodes Road, Apt. 2, Austin, TX 78721. He is a member of the Texas State Conference of NAACP Branches and is an African-American registered voter.  He is President of the Austin Branch of the NAACP.  He lives in current Congressional District 25, current State House District 46, and current State Senate District 46.

12. Proposed Defendant-Intervenor Reginald Lillie resides at 16611 Canterra Way Houston, TX 77095.  He is a member of the Texas State Conference of NAACP Branches and is an African-American registered voter.

## Congressional Plan

13. The State's congressional redistricting plan does not reflect the minority population gains in Texas over the last decade and, as such, does not afford minority voters equal opportunities for effective participation in the political process or equal opportunities to elect candidates of their choice comparable to their percentage of the state population.

14. After the 2010 Census, rapid population growth in Texas warranted the state receiving 4 additional seats in Congress.  Despite minority population accounting for almost all of the state's growth, 3 out of the 4 new districts in the state's new plan are Anglo-controlled.  The fourth is a Hispanic opportunity district.  African-Americans constitute 12% of Texas' voting age population, and an even higher percentage of its citizen voting age population.  Under the previous congressional plan, African-Americans had the opportunity to elect a candidate of choice in 3 out of 32 Congressional districts (9.375%).  African-Americans were already

underrepresented.  Under the new plan, African Americans will only have the opportunity to elect their candidate of choice in 3 out of 36 Congressional districts (8.33%).  The addition of 4 Congressional seats without making one of those seats an African-American opportunity seat is retrogressive for African-American voters in the state.

15. Changes made to Congressional District 30, currently an African-American opportunity seat, will make it harder for African-American voters in that district to continue electing their candidate of choice.  The incumbent, Congresswoman Eddie Bernice Johnson, was drawn out of the district she currently represents.  While not a bar to her running in that district, it will make it harder for her to campaign in that district.  Additionally, her district office was drawn out of the district, adding to the difficulty in successfully campaigning in that district.

16. Other changes were made to Congressional District 30 that will make it more difficult for the incumbent candidate of choice of black voters to campaign in the district.  Areas of Dallas that had been a huge source of financial support for the Congresswoman were removed from the district, including downtown and business districts.

17. Areas of Dallas to which the Congresswoman worked tirelessly to bring financial support were removed from the district.  The Congresswoman brought millions of dollars to the Uptown area, the Woodard Rogers Deck Park, the downtown businesses, including the headquarters for DART, the medical district, Love Field, and the Dallas Arts District.  All of these areas were removed from District 30.  Losing the carefully-cultivated financial support and votes of these areas will make it more difficult for voters in Congressional District 30 to continue electing their candidate of choice.

18. The city of Balch Springs was removed from Congressional District 30. Congresswoman Johnson was responsible for obtaining infrastructure funding and economic development dollars in this city.  Losing the carefully-cultivated financial support and votes of these areas will make it more difficult for voters in Congressional District 30 to continue electing their candidate of choice.

19. The new configuration of Congressional District 30 packs practically every minority precinct in the Dallas-Fort Worth area into the district, thus preventing the creation of an additional African American opportunity district in the region.

State Senate Plan

20. Under the previous State Senate plan, African-Americans had the opportunity to elect their candidate of choice in 3 out of the state's 31 senate districts (9.68%).  The State Senate plan enacted creates no new African-American opportunity seats and, in fact, weakens existing opportunity districts.

21. Despite the dramatic growth in Hispanic and African-American populations and the relative drop in Anglo population percentage, the proposed Senate plan boosts the influence of Anglos and reduces the influence of Hispanics and African-Americans.

22. Senate District 10 in this plan is clearly retrogressive for African-American voters. From 2000 to 2010, the minority population in this district significantly increased, and in 2008, cohesion between African-American and Hispanic voters enabled the election of a candidate of choice of minority voters in Senate District 10.  In its Section 5 submission to the Department of Justice in 2001, the State of Texas forecast this development.  See State of Texas 2001 Redistricting Plan Submission, August 15, 2001.

23. The state senate plan enacted by the State of Texas cracked apart Senate District 10 into 4 different districts.  The map eliminates Senate District 10 as an effective

coalition district by taking the combined African American and Hispanic population from 47% of the district to 40% of the district.

24. The State Senate plan packs minority voters into districts so as to limit the opportunity of African-Americans, despite their significant growth in overall population and percentage of total population, to elect their candidates of choice across the state.

<u>State House Plan</u>

25. Under the previous State House plan, African-Americans had the opportunity to elect their candidate of choice in 15 out of the state's 150 house districts (10%). The State House plan enacted creates no new African-American opportunity seats and, in fact, weakens existing African-American opportunity districts.

26. As far as coalition districts, the enacted State House plan reduces the number of Majority Black plus Hispanic districts from 57 in the benchmark to 53 in the enacted plan.

27. Under the enacted plan, House District 22 went from 57.05% Black Citizen Voting Age Population (BCVAP) and 7.54% Hispanic Citizen Voting Age Population (HCVAP) under the benchmark to 50.55% BCVAP and 6.91% HCVAP in the enated plan. House District 22 is currently represented by a candidate of choice of African-American voters.

28. Under the enacted plan, House District 109 went from 62.59% BCVAP and 8.50% HCVAP under the benchmark to 57.03% BCVAP and 10.68% HCVAP in the new plan. House District 109 is currently represented by a candidate of choice of African-American voters.

29. Under the enacted plan, House District 95 lowered the combined black and Hispanic voting age populations by 6.94%.  House District 95 is currently represented by a candidate of choice of African-American voters.

30. Under the enacted plan, House District 131 was dropped 5.26% in BCVAP and 2.26% in HCVAP.  House District 131 is currently represented by a candidate of choice of African-American voters.

31. Under the enacted plan, House District 139 was dropped 5.06% in BCVAP and 9.62% in HCVAP.  House District 139 is currently represented by a candidate of choice of African-American voters.

32. The State House plan creates no new opportunity districts for African-Americans, despite their significant growth in overall population and percentage of total population, to elect their candidates of choice across the state, and weakens several existing opportunity districts.

<u>Intervention Is Necessary to Assert Intervenors' Particularized and Unique Interests</u>

33. If the Texas congressional, state house and state senate plans are precleared, Proposed Defendant-Intervenors will be forced to participate in elections that will make it harder for them as African-American voters to elect their candidates of choice.

34. The interests of Proposed Defendant-Intervenors may not be adequately represented by the Defendant in light of the nature of the complaint in this action.  The Defendant is bound by institutional constraints that are likely to direct its strategy in litigation, including the arguments proffered or the type of evidence presented. Indeed, this Court has recognized that government entities often cannot adequately represent the interests of private parties. *See*, *e.g.*, *Diamond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986) (granting intervention of a private party seeking

to protect its financial interest despite presence of government entity representing general public interest); *see also Natural Resources Defense Council, Inc. v. United States Environmental Protection Agency*, 99 F.R.D. 607, 610 n.5 (D.D.C. 1983) (granting intervention of private industry party in recognition that EPA representation of public interest might not always coincide with interest of the industry).

35. This Court commonly grants intervention to minority voters and officeholders in Section 5 preclearance actions, and has already done so in this case when it granted the motion to intervene of Senator Wendy Davis, Representative Marc Veasey, John Jenkins, Vicki Bargas and Romeo Muñoz.  *See*, *e.g.*, *Georgia v. Ashcroft*, 539 U.S. 461, 477 (2003); *Bossier Parish Sch. Bd. v. Reno*, 157 F.R.D. 133 (D.D.C. 1994); *City of Lockhart v. United States*, 460 U.S. 125, 129 (1983); *County Council of Sumter County v. United States*, 555 F. Supp. 694, 697 (D.D.C. 1983); *Busbee v. Smith*, 549 F. Supp. 494 (D.D.C. 1982), *aff'd* 459 U.S. 1166 (1983).

36. The Defendant does not have the same stake in this matter as citizens who are covered under and protected by Section 5 of the Voting Rights Act—citizens who have and continue to experience discrimination that impedes their ability to fully participate in the political process.   The Defendant does not have the same stake in this matter as an association of African-American and other minority voters across the state that, historically, have experienced voting discrimination which has impaired their ability to participate fully and equally in Texas's political process. The Texas State Conference of NAACP Branches has been in the forefront of efforts to reverse decades of discrimination and seeks here to defend those gains.

37. Alternatively, Proposed Defendant-Intervenors request permissive intervention pursuant to Fed. R. Civ. P. Rule 24(b).  Proposed Defendant-Intervenors seek to

prevent the implementation of the state's redistricting plans because they create a retrogressive effect on the ability of minority voters to elect preferred candidates of choice, thus violating Section 5 of the Voting Rights Act.  This defense has issues of law and fact in common with the claims and defenses of the main action.

38. The grounds for this motion are further developed in the Memorandum of Support filed in conjunction with this motion.

Statement Pursuant to Local Rule 7(m)

Counsel for Proposed Defendant-Intervenors contacted counsel for Plaintiffs, Defendants, and Defendant-Intervenors in a good faith effort to determine whether the existing parties oppose this motion.  Counsel for Proposed Defendant-Intervenors believe or have confirmed that Defendants United States and Attorney General Holder oppose intervention as of right, but do not oppose permissive intervention; Plaintiff State of Texas opposes the motion to intervene; and Defendant-Intervenors do not oppose the motion to intervene.

WHEREFORE, movants respectfully request that their Motion for Leave to Intervene as Defendants be granted.

This, the 6th day of September, 2011.

Respectfully submitted,

__/s/   Robert S. Notzon_____
Robert S. Notzon
Law Office of Robert S. Notzon
T.X. State Bar Number 00797934
1507 Nueces Street
Austin, TX 78701
512-474-7563
512-474-9489 fax
Robert@NotzonLaw.com


Anita S. Earls
N.C. State Bar No. 15597
Allison J. Riggs
N.C. State Bar No. 40028
Southern Coalition for Social Justice
1415 West Highway 54, Suite 101
Durham, NC 27707
Telephone: 919-323-3380
Fax: 919-323-3942
Anita@southerncoalition.org
Allison@southerncoalition.org

Gary L. Bledsoe
Law Office of Gary L. Bledsoe and Associates
T.X. State Bar No. 02476500
316 West 12th Street, Suite 307
Austin, Texas 78701
Telephone: 512-322-9992
Fax: 512-322-0840
Garybledsoe@sbcglobal.net

Victor L. Goode
Assistant General Counsel
NAACP
4805 Mt. Hope Drive
Baltimore, MD 21215-3297
Telephone: 410-580-5120
Fax: 410-358-9359
vgoode@naacpnet.org

Attorneys for Proposed Defendant-Intervenors

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

_____ )
STATE OF TEXAS,                            )
                                           )
            Plaintiff,                     )
                                           )
      v.                                   )
                                           )
UNITED STATES OF AMERICA;                  )
ERIC H. HOLDER, JR., in his official       )
Capacity as Attorney General of the        )
United States,                             )
                                           )
            Defendant,                     )
                                           )
      and                                  )
                                           )
SENATOR WENDY DAVIS,                       )
REPRESENTATIVE MARC VEASEY,                )
JOHN JENKINS, VICKI BARGAS,                )
And ROMEO MUÑOZ,                           )
                                           )
            Defendant-Intervenors          )
                                           )
      And                                  )
                                           )
TEXAS STATE CONFERENCE OF                  )
NAACP BRANCHES, JUANITA                    )
WALLACE, REV. BILL LAWSON,                 )
HOWARD JEFFERSON, ERICKA CAIN,             )
NELSON LINDER, and REGINALD                )
LILLIE,                                    )
                                           )
            Proposed Defendant-Intervenors. )
_____ )

### PROPOSED DEFENDANT-INTERVENORS' MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO INTERVENE

This lawsuit seeking a declaratory judgment that the Texas congressional, state

legislative and state board of education redistricting plans comply with Section 5 of the

Voting Rights Act was filed by the State of Texas on July 19, 2011.  The Proposed

13

Defendant-Intervenors Texas State Conference of NAACP Branches, Juanita Wallace, Rev. Bill Lawson, Howard Jefferson, Ericka Cain, Nelson Linder, and Reginald Lillie seek to intervene in this action in order to protect their interests as African-American voters and to avoid the enactment of plans, in violation of Section 5, that would make it harder for African-American voters to elect their candidates of choice.  Proposed Defendant-Intervenors seek intervention as of right under Federal Rule of Civil Procedure 24(a)(2) or, alternatively, permissive intervention under Fed. R. Civ. P. 24(b).

I. <u>Intervention as of Right Is Warranted in This Matter</u>

Federal Rule of Civil Procedure 24(a)(2) outlines the requirements for intervention as a matter of right and states:

> Upon timely application anyone shall be permitted to intervene in an action: … (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Thus, to intervene as of right, an applicant must satisfy the following requirements: (1) the application must be timely; (2) the applicant must have an interest in the subject matter sufficient to merit intervention; (3) the disposition of the case could impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the existing parties to the litigation. Fed. R. Civ. P. 24(a); *See Jones v. Prince George's County*, 348 F.3d 1014, 1017 (D.C. Cir. 2003); *see also Mova Pharm. Corp. v. Shalala,* 140 F.3d 1060, 1074 (D.C. Cir. 1998).  The Proposed Defendant-Intervenors satisfy the requirements to intervene as of right pursuant to Fed. R. Civ. P. 24(a)(2).

Federal courts have repeatedly stressed that Rule 24's intervention requirements should be construed liberally in favor of intervention. *See, e.g.*, *Nuesse v. Camp*, 385 F.2d

694, 702-04 (D.C. Cir. 1967) (acknowledging the need for liberal construction of the rules governing intervention as of right); *American Horse Prot. Ass'n., Inc. v. Veneman,* 200 F.R.D. 153, 157 (D.D.C. 2001) (recognizing the interest requirement is "liberal and forgiving"); *Wilderness Society v. Babbitt*, 104 F. Supp. 2d 10 (D.D.C. 2000) (emphasizing liberal approach to intervention). *See also Turn Key Gaming, Inc. v. Oglala Sioux Tribe*, 164 F.3d 1080, 1081 (8th Cir. 1999) (encouraging that doubts be resolved "in favor of the proposed intervenor," when considering intervention under Rule 24).

The Proposed Defendant-Intervenors' motion satisfies Rule 24(a)(2)'s requirements because it is timely, the Proposed Defendant-Intervenors have direct and significant interests in this action that cannot be adequately protected by the current parties to the litigation, and the Proposed Defendant-Intervenors' ability to protect their interest could be impeded depending on the disposition of the litigation. *See American Horse Prot. Ass'n.,* 200 F.R.D. at 157 (D.D.C. 2001).

A. The Motion of Proposed Defendant-Intervenors to Intervene is Timely

Timeliness is measured from when the proposed intervener "knew or should have known that any of its rights would be directly affected by the litigation." *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C.Cir. 2003), *cert. denied*, 542 U.S. 915 (2004). When considering timeliness, courts generally look at the following factors: the applicant's interest in the case, the need for intervention to preserve the applicant's rights, potential prejudice to the existing parties, prejudice to the intervenor if the intervention is not granted, and any unusual circumstances in favor of or opposed to intervention. *See Smoke v. Norton,* 252 F.3d 468, 470-471 (D.C. Cir. 2001) (outlining factors to be considered under timeliness analysis); *Hirshon v. Republic of Bolivia*, 979 F. Supp. 908, 913 n.5 (D.D.C. 1997) (reviewing timeliness factors). Here, Plaintiffs filed their complaint on July 19, 2011. Defendants have yet to file a pleading responsive to the Complaint, and are not required to

15

do so until September 19, 2011.  The Proposed Defendant-Intervenors' motion plainly satisfies this timeliness standard. The motion is being submitted a little over a month since the Complaint was filed, before any dispositive motions have been filed, and well before commencement of any potential discovery.  Moreover, the Proposed Defendant-Intervenors seek to participate in the case on the same schedule as the other parties. *Cf. Nationwide Mut. Ins. Co. v. Nat'l REO Mgmt., Inc.,* 205 F.R.D. 1, 6 (D.D.C. 2000) (memorandum opinion) (intervention motion six months after filing of action is timely); *Nationwide Wildlife Fed'n v. Burford,* 676 F. Supp. 271 (D.D.C. 1985) (intervention motion three months after filing of suit is timely).  Under these circumstances, this motion is timely and granting intervention pursuant to Rule 24(a)(2) would not prejudice the existing parties or alter the Court's discovery or pre-trial schedule.

B.  <u>The Proposed Defendant-Intervenors Have a Direct, Substantial and Legally Protectable Interest in the Claims and Defenses Raised in this Case</u>

The Proposed Defendant-Intervenors seek to intervene in this matter to ensure that African-American voters in Texas are not placed into congressional or state legislative districts in which it will be harder for them to have an equal opportunity for participation. They seek to protect the gains in representation and political participation that the State Conference of NAACP Branches and African American Texans have struggled to achieve for decades.  The standard to determine the sufficiency of intervenors' interest is not stringent, and it "is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Cook v. Boorstin*, 763 F.2d 1462, 1466 (D.C. Cir. 1985) (internal citations omitted).  Here, the Proposed Defendant-Intervenors have a direct, substantial, and legally protectable interest in this action.

16

The individual Proposed Defendant-Intervenors, as African-American residents of Texas, have a direct and substantial interest in whether the retrogressive congressional and state legislative plans enacted by the Texas legislature are implemented because they will vote in and be represented by persons elected from these districts.  Proposed Defendant-Intervenor Texas State Conference of NAACP Branches has a direct and substantial interest in this case and its outcome because it is an association of minority voters across the state who have experienced voting discrimination because of their race. Furthermore, as residents of Texas, Proposed Defendant-Intervenors are able to observe and speak to the continuing need for the protections of Section 5 and why the changes enacted by the State will make it harder for African American voters to participate in the political process.  All of these factors demonstrate the interest that the Proposed Defendant-Intervenors have in the subject matter of this litigation.

As a final matter, in cases involving constitutional challenges to a particular statutory scheme, courts have held that "the interests of those who are governed by those schemes are sufficient to support intervention." *Chiles v. Thornburg,* 865 F.2d 1197, 1214 (11th Cir. 1989) (*quoting* 7C Charles Alan Wright, Arthur Miller and Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE 1908, at 285 (2d ed.1986)). In addition to seeking preclearance, the State has reserved the right to challenge the constitutionality of Section 5 pending this Court's decision in *Shelby County, Ala. v. Holder*, No. 10-cv-00651 (D.D.C.), and *LaRoque v. Holder*, No. 10-cv-00561 (D.D.C.).  Thus, for all of the reasons outlined, the Proposed Defendant-Intervenors, as citizens with voting rights affected by the statewide redistricting plans and as an association that represents such citizens, have a legally recognizable interest in this action.

C. <u>The Outcome of the Litigation May Impair the Ability of Proposed Defendant-Intervenors to Protect Their Rights</u>

What is at stake in this case is the ability of the Proposed Defendant-Intervenors to, as minority voters, elect the candidates of their choosing. If these plans are precleared, the disposition of this case would irrevocably impair the voting rights of the Proposed Defendant-Intervenors. Proposed Defendant-Intervenors would be forced to live, vote and be governed under a retrogressive redistricting scheme until such time that subsequent, time-consuming litigation, including appeals, could be conducted to challenge the plans. In the time that takes, gains that Proposed Defendant-Intervenors struggled so valiantly for could be lost.

D.  Proposed Defendant-Intervenors' Interests May Not Be Adequately Represented by the Present Party

Minority voters living in the jurisdiction covered by Section 5 will undoubtedly bring to this litigation a "[l]ocal perspective on the current and historical facts at issue" with which this Court would otherwise not be presented and which would assist the Court's understanding of the claims. *See Sandusky County Democratic Party v. Blackwell*, 387 F.3d 565 (6th Cir. 2004) (granting voters' motion to intervene in HAVA suit); *Commack Self-Service Kosher Meats, Inc. v. Rubin,* 170 F.R.D. 93 (E.D.N.Y. 1996) (commenting on the different perspective intervenors would bring to the case that might assist court). In meeting this prong of the intervention analysis, Proposed Defendant-Intervenors have only the "minimal" burden of showing that the representation of their interests by existing parties could be inadequate. *Trbovich v. United Mine Workers of America,* 404 U.S. 528, 538 n. 10 (1972).

While the present Defendant's obligation is to represent the broad interests of the United States and the Attorney General, the Proposed Defendant-Intervenors represent specifically their own personal interests as Texas African-American voters. The Defendant—the Attorney General of the United States charged with enforcing the Voting

Rights Act, and, more specifically, Section 5—does not have the same stake in this case as do Proposed Defendant-Intervenors—minority voters and the intended beneficiaries of the Voting Rights Act.  In fact, courts have frequently found that government entities cannot adequately represent the interests of private parties.  *See Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986); *Friends of Animals v. Kempthorne*, 452 F. Supp. 2d. 64, 70 (D.D. C. 2006).  Significantly, agreement on the constitutionality or lawfulness of a statute does not imply that Proposed Defendant-Intervenors and the Attorney General would agree on all grounds.  *Natural Resources Defense Council v. Costle*, 561 F.2d 904, 912 (D.C. Cir. 1977).  Although other Defendant-Intervenors may represent the interests of a few minority voters, they will also represent the interests of elected officials, and those interests may be at odds with the larger African-American community.  Moreover, the Texas State Conference of NAACP Branches represents an enormous number of voters in every region of the state, bringing under their umbrella a wide range of interests.  The cases cited above make clear that the interests of all possible parties in voting rights litigation are not coextensive.  This divergence often affects the course of litigation.  Thus, intervention as a matter of right is justified here because the Proposed Defendant-Intervenors' interests will not be adequately represented by existing parties and they meet all of the requirements of intervention as a matter of right.

II. Alternatively, Permissive Intervention Is Also Appropriate in This Case

Rule 24(b) of the Federal Rules of Civil Procedure sets forth an alternative basis for the Proposed Defendant-Intervenors' intervention in this action.  Rule 24(b) directs that permissive intervention may be granted "when an applicant's claim or defense and the main action have a question of law or fact in common." Fed. R. Civ. P. 24(b)(2).  "[W]hether the intervention will unduly delay or prejudice the existing parties" is the primary consideration when deciding upon permissive intervention.  *Commack Self-Service Kosher*

*Meats,* 170 F.R.D. at 106.  Courts have not interpreted this provision narrowly.  *Nuesse v. Camp,* 385 F.2d 694,704 (D.C. Cir. 1967).  A court is to consider, in deciding upon permissive intervention, whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties, and that decision is well within the discretion of the court. Fed. R. Civ. P. 24(b)(2).  *Huron Envt'l. Activist League v. United States Envt'l. Protection Agency,* 917 F. Supp. 34, 43 (D.D.C. 1996) (permissive intervention was allowed where plaintiffs' claims have both questions of law and fact in common with the main action and the court concluded that the intervention would not unduly delay the adjudication of the rights of the original parties).

Given the unique and important perspectives of the Proposed Defendant-Intervenors with respect to the effects of the retrogressive congressional and state legislative redistricting plans across the entire state of Texas, their intervention in this matter would very likely enhance the Court's understanding of the underlying legal and factual issues and promote an efficient resolution of this action.  The defenses and claims presented by the Proposed Defendant-Intervenors will have common questions of law and fact as the Complaint.  Intervention will not delay the litigation, as the action has just commenced and the Proposed Defendant-Intervenors have averred that they will participate on the same schedule that will be established for the existing parties. In all, these factors clearly establish the propriety of permissive intervention in this case.  Should the Court decline to grant intervention as of right, it should grant this request for permissive intervention.

III. As a General Matter, Courts Recognize the Particular Significance of Rule 24 Intervention in Voting Rights Cases

Intervention in voting rights cases by those representing the interests of African-American and other minority voters is often appropriate, because the interests of the intended beneficiaries of the VRA will likely add necessary perspectives and arguments to

legal proceedings involving interpretations of the Act.  It is also appropriate because those interests may differ from the positions of institutional parties such as the Attorney General. Indeed, courts have granted intervention in a broad range of voting rights matters including declaratory judgment actions, Section 2 vote dilution cases, and matters challenging the constitutionality of Section 5 of the Voting Rights Act, 42 U.S.C. 1973c. *See*, *e.g.*, *Georgia v. Ashcroft*, 539 U.S. 461, 477 (2003) (upholding D.C. District Court's grant to private parties' motion to intervene on grounds that intervenors' interests were not adequately represented by the existing parties and finding generally that private parties may intervene in Section 5 declaratory judgment actions if the requirements of Rule 24 are satisfied); *Bossier Parish Sch. Bd. v. Reno*, 157 F.R.D. 133 (D.D.C. 1994) (permitting intervention by African-American voters from Texas in Section 5  declaratory judgment action); *City of Lockhart v. United States*, 460 U.S. 125, 129 (1983) (acknowledging intervention of Hispanic voters); *County Council of Sumter County v. United States*, 555 F. Supp. 694, 697 (D.D.C. 1983) (permitting intervention by African-American voters in Section 5 declaratory judgment action); *Busbee v. Smith*, 549 F. Supp. 494 (D.D.C. 1982) (acknowledging intervention of African American voters in Section 5 declaratory judgment action), *aff'd* 459 U.S. 1166 (1983).

District courts have also regularly permitted intervention in other voting rights cases, including those in which the United States or other governmental entity has been a party.  *See*, *e.g.*, *Shaw v. Hunt*, 861 F. Supp 408, 420 (E.D.N.C. 1994); *Vera v. Richards*, 861 F. Supp. 1304, 1310 (S.D.Tex. 1994); *Miller v. Johnson*, 515 U.S. 900, 909 (1995); *Abrams v. Johnson*, 117 S. Ct. 1925, 1930 (1997); *Shelby County, Alabama v. Holder*, No. 1:10-cv-00651 (D.D.C., Order Granting Intervention; *LaRoque v. Holder*, No. 1:10-cv-00561 (D.D.C., Order Granting Intervention August 25, 2010); *see also Meek v. Metropolitan Dade County,* 985 F.2d 1471, 1474 (11th Cir. 1993).  For example, in *Miller v. Blackwell*, 348 F. Supp. 2d

916 (S.D. Ohio 2004), the court permitted intervention in a suit arising under the National Voter Registration Act after determining that claimants' interest in avoiding dilution of their votes was different from the interests of state election officials, thus, reducing likelihood that those officials could adequately represent interests of the intervenors. African American voters in Texas whose right to vote historically was abridged by the use of literacy tests, voter suppression tactics and intimidation have a strong interest in protecting their ability to elect candidates of their choice and have an interest in their voices being heard in this litigation.

For all of the foregoing reasons, Proposed Defendant-Intervenors respectfully request that their Motion for Leave to Intervene as Defendants be granted under Fed. R. Civ. P. 24(a)(2) or, in the alternative, under Fed. R. Civ. P. 24(b).

This, the 6th day of September, 2011.

Respectfully submitted,

__/s/   Robert S. Notzon_____
Robert S. Notzon
DCDC Bar # TX0020
Law Office of Robert S. Notzon
T.X. State Bar Number 00797934
1507 Nueces Street
Austin, TX 78701
512-474-7563
512-474-9489 fax
Robert@NotzonLaw.com


Anita S. Earls
N.C. State Bar No. 15597
Allison J. Riggs
N.C. State Bar No. 40028
Southern Coalition for Social Justice
1415 West Highway 54, Suite 101
Durham, NC 27707
Telephone: 919-323-3380
Fax: 919-323-3942
Anita@southerncoalition.org
Allison@southerncoalition.org

Gary L. Bledsoe
Law Office of Gary L. Bledsoe and Associates
State Bar No. 02476500
316 West 12th Street, Suite 307
Austin, Texas 78701
Telephone: 512-322-9992
Fax: 512-322-0840
Garybledsoe@sbcglobal.net

Victor L. Goode
Assistant General Counsel
NAACP
4805 Mt. Hope Drive
Baltimore, MD 21215-3297
Telephone: 410-580-5120
Fax: 410-358-9359
vgoode@naacpnet.org

Attorneys for Proposed Defendant-Intervenors

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

STATE OF TEXAS,                                    )
                                                   )
      Plaintiff,                             )
                                                   )
      v.                                     )
                                                   )
UNITED STATES OF AMERICA;                          )
ERIC H. HOLDER, JR., in his official               )
Capacity as Attorney General of the                )
United States,                                     )
                                                   )
      Defendant,                             )
                                                   )
      and                                    )
                                                   )
SENATOR WENDY DAVIS,                               )
REPRESENTATIVE MARC VEASEY,                        )
JOHN JENKINS, VICKI BARGAS,                        )
And ROMEO MUÑOZ,                                   )
                                                   )
      Defendant-Intervenors                  )
                                                   )
      And                                    )
                                                   )
TEXAS STATE CONFERENCE OF                          )
NAACP BRANCHES, JUANITA                            )
WALLACE, REV. BILL LAWSON,                         )
HOWARD JEFFERSON, ERICKA CAIN,                     )
NELSON LINDER, and REGINALD                        )
LILLIE.                                            )
                                                   )
      Proposed Defendant-Intervenors.        )
_____)


## ANSWER OF PROPOSED DEFENDANT-INTERVENORS

NOW COME the Texas State Conference of NAACP Branches, Juanita Wallace, Rev. Bill

Lawson, Howard Jefferson, Ericka Cain, Nelson Linder, and Reginald Lillie, Proposed

Defendant-Intervenors in the above-captioned action, and answer Plaintiff's Complaint as follows:

<u>Affirmative Defense</u>

1.      The Congressional, State Senate and State House plans enacted by the Texas Legislature violate Section 5 of the Voting Rights Act, 42 U.S.C. §1973c.  The declaratory judgment sought by Plaintiffs should thus be denied.

<u>Answers to Allegations</u>

1.      ADMITTED.

2.      ADMITTED.

3.      ADMITTED that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

4.      ADMITTED.

5.      ADMITTED that Texas gained 4 Congressional seats.  The 2010 Census data speak for themselves.

6.      ADMITTED.

7.      ADMITTED.

8.      ADMITTED.

9.      WITHOUT KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations asserted in this paragraph and therefore DENY the same.

10.      ADMITTED.

11.      ADMITTED.

12.     WITHOUT KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations asserted in this paragraph and therefore DENY the same.

13.     WITHOUT KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations asserted in this paragraph and therefore DENY the same.

14.     WITHOUT KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations asserted in this paragraph and therefore DENY the same.

15.     WITHOUT KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations asserted in this paragraph and therefore DENY the same.

16.     ADMITTED.

17.     ADMITTED.

18.     WITHOUT KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations asserted in this paragraph and therefore DENY the same.

19.     DENIED.  The House Plan is not legally enforceable unless and until preclearance is obtained under Section 5 of the Voting Rights Act.

20.     DENIED.

21.     DENIED.

22.     DENIED.

23.     ADMITTED.

24.     ADMITTED.

25.    WITHOUT KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations asserted in this paragraph and therefore DENY the same.

26.    DENIED.  The Senate Plan is not legally enforceable unless and until preclearance is obtained under Section 5 of the Voting Rights Act.

27.    DENIED.

28.    DENIED.

29.    DENIED.

30.    ADMITTED.

31.    ADMITTED.

32.    ADMITTED.

33.    WITHOUT KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations asserted in this paragraph and therefore DENY the same.

34.    DENIED.

35.    DENIED.

36.    DENIED.

37.    DENIED.

38.    REQUIRES NO RESPONSE.  Paragraph 38 contained no factual allegations. To the extent there are any factual allegations in paragraph 38, DENIED.

39.    WITHOUT KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations asserted in this paragraph and therefore DENY the same.

40.    WITHOUT KNOWLEDGE OR INFORMATION sufficient to form a belief as to the truth of the allegations asserted in this paragraph and therefore DENY the same.

41.    REQUIRES NO RESPONSE.  Paragraph 38 contained no factual allegations. To the extent there are any factual allegations in paragraph 38, DENIED.

42.    DENIED.

43.    DENIED.

44.    REQUIRES NO RESPONSE.  Paragraph 38 contained no factual allegations. To the extent there are any factual allegations in paragraph 38, DENIED.

45.    DENIED.

46.    DENIED.

47.    REQUIRES NO RESPONSE.  Paragraph 38 contained no factual allegations. To the extent there are any factual allegations in paragraph 38, DENIED.

48.    DENIED.

49.    DENIED.


This, the 6th day of September, 2011.

Respectfully submitted,

__/s/   Robert S. Notzon_____
Robert S. Notzon
DCDC Bar # TX0020
Law Office of Robert S. Notzon
T.X. State Bar Number 00797934
1507 Nueces Street
Austin, TX 78701
512-474-7563
512-474-9489 fax
Robert@NotzonLaw.com


Anita S. Earls
N.C. State Bar No. 15597
Allison J. Riggs
N.C. State Bar No. 40028
Southern Coalition for Social Justice
1415 West Highway 54, Suite 101
Durham, NC 27707
Telephone: 919-323-3380
Fax: 919-323-3942
Anita@southerncoalition.org
Allison@southerncoalition.org

Gary L. Bledsoe
Law Office of Gary L. Bledsoe and Associates
State Bar No. 02476500
316 West 12th Street, Suite 307
Austin, Texas 78701
Telephone: 512-322-9992
Fax: 512-322-0840
Garybledsoe@sbcglobal.net

Victor L. Goode
Assistant General Counsel
NAACP
4805 Mt. Hope Drive
Baltimore, MD 21215-3297
Telephone: 410-580-5120
Fax: 410-358-9359
vgoode@naacpnet.org

Attorneys for Proposed Defendant-Intervenors

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of September, 2011, I served a copy of the foregoing

Motion for Leave to Intervene, Memorandum in Support, Proposed Answer, and Proposed

Order on counsel for the State of Texas, counsel for the United States, and counsel for

Defendant-Intervenors via email.

                                      __/s/   Robert S. Notzon_____
*Counsel for Proposed Defendant-Intervenors*