IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STATE OF TEXAS,<br><br>        Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA; ERIC H. HOLDER, JR., in his official capacity as Attorney General of the United States,<br><br>        Defendant,<br><br>WENDY DAVIS *et al.*<br><br>        Defendant-Intervenors,<br><br>MEXICAN AMERICAN LEGISLATIVE CAUCUS,<br><br>        Defendant-Intervenor,<br><br>GREG GONZALES *et al.*<br><br>        Defendant-Intervenors,<br><br>TEXAS LEGISLATIVE BLACK CAUCUS,<br><br>        Defendant-Intervenor,<br><br>TEXAS LATINO REDISTRICTING TASK FORCE,<br><br>        Defendant-Intervenor,<br><br>TEXAS STATE CONFERENCE OF NAACP BRANCHES *et al.*<br><br>        Defendant-Intervenors,<br><br>LEAGUE OF UNITED LATIN AMERICAN CITIZENS,<br><br>        Defendant-Intervenor. | Civil Action No. 1:11-cv-01303 (RMC-TBG-BAH) |

**GONZALES INTERVENORS' MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, LITIGATION EXPENSES, AND EXPERT FEES**

-2-

The Gonzales Intervenors joined this case to prevent Texas from conducting any elections under the congressional district map it adopted in 2011. The Gonzales Intervenors achieved this goal, while also succeeding -- along with other parties -- in having the 2012 Congressional election conducted under a new map that better serves the Gonzales Intervenors' interests. The Gonzales Intervenors, working with the Defendant and Defendant-Intervenors, achieved these results by investing considerable time and resources into showing that the Court should not grant preclearance to Texas's congressional map. Because the Gonzales Intervenors helped to prevent the preclearance of Texas's original congressional plan and caused Texas to adopt an improved plan from the perspective of minority voting rights, they are prevailing parties and are entitled to their reasonable attorneys' fees and costs.

Accordingly, the Gonzales Intervenors respectfully request an award of all their reasonable attorneys' fees, litigation expenses, and expert fees. As detailed below, the attorneys' fees sought are reasonable because the time spent litigating this matter was efficient, despite the matter's complexity, and the rates sought are consistent with the prevailing market rates for similar services by attorneys of comparable skill, experience, expertise, and reputation. In addition, the litigation costs are of the type normally reimbursed in such cases, and the expert fees were necessary to analyze and report on key issues raised by Texas's congressional map. Counsel for the Gonzales Intervenors have exercised reasonable billing judgment; have kept detailed, accurate, and contemporaneous billing records; and have submitted such records with this Memorandum for the Panel's review. Accordingly, the Gonzales Intervenors request an award of $513,665.30 for attorneys' fees, $34,784.62 for reasonable litigation costs, and $49,265.70 for expert fees.

LEGAL24617361.2

## I.   BACKGROUND

On July 19, 2011, Texas filed its complaint seeking a declaratory judgment that three of its newly-enacted redistricting plans, including its congressional plan C185, comply with Section 5 of the Voting Rights Act.  Complaint, *Texas v. Holder et al.*, 11-cv-01303-RMC-TBG-BAH (D.D.C.), ECF No. 1 (hereafter citations to documents filed in this case will be to "ECF No."). Shortly thereafter, the Gonzales Intervenors successfully moved to intervene to oppose Plan C185.  ECF No. 14.  Texas filed a Motion for Summary Judgment seeking preclearance of this plan, ECF No. 41, and various Defendant-Intervenors, including the Gonzales Intervenors, filed a joint memorandum opposing summary judgment, ECF No. 74.  The Gonzales Intervenors also filed their own memorandum in opposition, presenting additional arguments and evidence demonstrating that C185 violated Section 5.  ECF No. 77.  This Panel denied Texas's motion for summary judgment, and the parties engaged in expedited discovery.  ECF Nos. 106, 112.  The Panel sat for trial in January 2012, and the Gonzales Intervenors presented various witnesses, voluminous evidence, and expert reports in support of their argument that benchmark Congressional Districts 23, 25, and 27 are minority-ability districts, that the Plan eliminated all three as ability districts, and that the Plan was retrogressive in purpose and effect.  *See* ECF No. 204.

On August 28, 2012, this Panel issued a Memorandum Opinion denying Texas preclearance of Plan C185.  ECF No. 230.  The Panel found that C185 had a retrogressive effect and was enacted with a discriminatory intent.  *Id.* at 38.  Texas appealed, but while the appeal was pending, it enacted a new congressional plan, C235.  ECF Nos. 236, 239.  This plan increased the protection of minority voting rights and thereby served the Gonzales Intervenors' interests better than C185.  It established a minority-ability district in the Dallas-Ft. Worth area

and re-established CD 23 as a Hispanic-ability district. Because the Gonzales Intervenors helped to prevent implementation of C185 and contributed to Texas's decision to adopt a plan that better serves the Gonzales Intervenors' interests, they are prevailing parties and are entitled to reasonable attorneys' fees and costs under 42 U.S.C. § 1973l(e).

## II.   ARGUMENT

### A.   Gonzales Intervenors Are Presumed to Be Prevailing Parties

Pursuant to the Voting Rights Act fee-shifting provision, "[i]n any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment, the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, reasonable expert fees, and other reasonable litigation expenses as part of the costs." 42 U.S.C. § 1973l(e). Although an award of attorneys' fees is discretionary, fees should be granted "unless special circumstances would render an award unjust." *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 (1968). This Circuit has established a presumption in Section 5 cases that where there has been a judgment denying preclearance under Section 5 of the Voting Rights Act, "the court <u>must assume</u> that a defendant-intervenor is a prevailing party." *Comm'rs Ct. of Medina Cnty., Tex. v. United States*, 683 F.2d 435, 442 n.12 (D.C. Cir. 1982) (emphasis added). Here, after finding that Texas's congressional plan C185 had a retrogressive effect and was enacted with a discriminatory purpose, the Court entered a judgment in favor of defendants. ECF Nos. 230, 231. Though the Supreme Court vacated the Court's judgment, the effect of the judgment did not change: C185 was never precleared or implemented. *See Texas v. United States*, No. 12-496, 2013 WL 3213539, *1 (U.S. June 27, 2013). Thus, the Court should assume that the Gonzales Intervenors are prevailing parties for the purposes of recovering their attorneys' fees and costs.

B.  **Gonzales Intervenors Are Also Entitled to Reasonable Attorneys' Fees and Costs Because They Played a Substantial Role in Attaining the Relief They Sought**

Even if the Panel does not apply this presumption, the Gonzales Intervenors satisfy the two-prong test for deciding whether a party is a "prevailing party" for the purposes of § 1973l(e). The test requires that "first, the party must have substantially received the relief sought, and second, the lawsuit must have been a catalytic, necessary, or substantial factor in attaining the relief." *Comm'rs Ct. of Medina Cnty., Tex. v. United States*, 683 F.2d 435, 440 (D.C. Cir. 1982); *see also Tucson Med. Ctr. v. Sullivan*, 947 F.2d 971, 982 (D.C. Cir. 1991). This formulation is "generous," *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), and is designed "to ensure 'effective access to the judicial process' for persons with civil rights grievances," *id.* at 429 (quoting H.R. Rep. No. 94-1558, at 1 (1976)). The Gonzales Intervenors prevailed in their claims and encouraged Texas to adopt a plan that better serves the Gonzales Intervenors' interests than the one submitted for preclearance. Thus, they are prevailing parties and are entitled to an award of reasonable attorneys' fees and costs.

1.  **The Gonzales Intervenors Have Substantially Received the Relief Sought**

Because "the objective sought to be accomplished by [their] intervention has been attained," the Gonzales Intervenors meet the first prong of the prevailing party test. *Comm'rs Ct. of Medina Cnty., Tex.*, 683 F.2d at 441. In a Section 5 case, "any resolution of the suit that does not result in approval of the subject plan must be viewed as the attainment of this objective," unless the suit concluded because another plan that is worse for defendant-intervenors was simultaneously precleared. *Id*. "Accordingly, the court must determine whether the final result represents, in a real sense, a disposition that furthers the interests of the defendant-intervenors." *Id*. Here, the Panel must decide whether the plan ultimately adopted by Texas (C235) better serves the Gonzales Intervenors' interests than the plan originally submitted for preclearance

-5-

(C185). *Id*. ("The outcome, in whatever form it is realized is measured against [the] benchmark [plan submitted to the Court]; a comparison of the two must reveal an actual conferral of benefit or relief from a burden.").

There can be no dispute that Plan C235 serves the Gonzales Intervenors' interests better than C185. Among the important changes in Plan C235 were the creation of a new minority-ability district in the Dallas-Ft. Worth area (Congressional District 33) and the redrawing of Congressional District 23 to make it a Hispanic-ability district. Both changes directly addressed concerns of the Gonzales Intervenors. First, because Intervenor Lisa Aguilar's district was Congressional District 23 under both Plan C185 and C235, the change to Congressional District 23 made Intervenor Aguilar's district a Hispanic-ability district, directly affecting her ability to elect candidates of her choice. *See* ECF No. 230 at 33-34 (finding that under Plan C185, Congressional District 23 was not a Hispanic-ability district). Similarly, under Plan C235, Intervenor Josephine Martinez lives in Congressional District 33, which did not exist in Plan C185 and which is the newly created minority-ability district in the Dallas-Ft. Worth area. Because of this change, Intervenor Martinez now resides in a district that provides her and other Hispanics the ability to elect their candidates of choice. In addition, the increased ability of minority groups to elect candidates of their choice under Plan C235 serves the interests of all of the Gonzales Intervenors because, as members of various minority groups, they are interested in increasing the overall representation and influence of minority groups in Congress. Thus, the Gonzales Intervenors prevailed in this action when Texas abandoned Plan C185 and permanently adopted C235.

Moreover, the Gonzales Intervenors were successful in obtaining the precise judicial determination that they sought when they joined this case -- a judgment denying preclearance to

Plan C185. As this was the entire relief requested by the Gonzales Intervenors in this litigation, the Gonzales Intervenors are a prevailing party under § 1973l(e). The Gonzales Intervenors also prevailed on a number of arguments raised throughout litigation in support of their position that Plan C185 violated Section 5, including:

- The three-judge Panel held that C185 was enacted with a discriminatory purpose. *Compare* ECF No. 230 at 38 *with* ECF No. 204 at 15.

- The Panel held that Congressional Districts 23 and 27 constitute lost ability districts. *Compare* ECF No. 230 at 29-33 *with* ECF No. 204 at 5.

- A majority of the Panel adopted the Gonzales Intervenors' argument that benchmark Congressional District 25 was a minority-ability crossover district. *Compare* ECF No. 230 at 73-88 *with* ECF No. 204 at 8. In so holding, the Panel rejected the contrary arguments of Texas, the United States, and one defendant-intervenor, and relied substantially upon the report of Gonzales Intervenors' expert, Dr. Stephen Ansolabehere.

- A majority of the Panel adopted the Gonzales Intervenors' argument that the loss of benchmark Congressional District 25, without the creation of any new ability district, renders the Plan retrogressive. *Compare* ECF No. 230 at 88 *with* ECF No. 204 at 14-15.

- The Panel held that Plan C185 was retrogressive because it increased the representation gap by one district. *Compare* ECF No. 230 at 34-38 *with* ECF No. 77 at 2.

The Gonzales Intervenors' success in obtaining the relief sought in this litigation further shows that they should be considered "prevailing parties" under § 1973l(e).

### 2. The Section 5 Case Was A Catalyst For Texas's Enactment of Plan C235

The Gonzales Intervenors satisfy the second prong of the "prevailing party" analysis because "the lawsuit was a catalyst motivating defendants to provide the primary relief sought by the litigation." *Comm'rs Ct. of Medina Cnty., Tex.* 683 F.2d at 442.  In Section 5 cases like this one, courts examine this factor by making "an objective assessment of the proceedings to determine whether the defense of the suit, e.g. the promise of an aggressive defense strategy or the spectre of extended litigation, led plaintiffs to take the action that resulted in the mooting of the case." *Id*. at 442.  Usually, "this portion of the inquiry involves facts that are totally within the control of the plaintiffs," so "it is useful for the court to consider the chronological sequence of the events and draw conclusions from the facts at hand." *Id*.

Here, the chronological sequence of events shows that the efforts of Defendant and Defendant-Intervenors, including the Gonzales Intervenors, "led [P]laintiff[] to take the action that resulted in the mooting of the case." *Comm'rs Ct. of Medina Cnty., Tex.* 683 F.2d at 442. The Defendant and Defendant-Intervenors, including the Gonzales Intervenors, submitted briefs and evidence in opposition to Texas's motion for summary judgment, and the Court ruled against Texas, denying summary judgment preclearance of Plan C185.  *See* ECF Nos. 74, 77, 106.  As a direct consequence, the Western District of Texas adopted an interim congressional plan for the 2012 elections, writing that "it has taken on the unwelcome obligation of drawing this interim plan solely because the State has failed to obtain the necessary preclearance of its enacted plan." *See Perez v. Perry*, No. 5:11-cv-00360-OLG-JES-XR, Dkt. # 544 at 16 (W.D. Tex. Nov. 26, 2011).  Following the Supreme Court's order remanding the interim plan to be redrawn, the Western District of Texas adopted C235, the current congressional plan. *See Perez v. Perry*, No. 5:11-cv-00360-OLG-JES-XR, Dkt. # 681 (W.D. Tex. Feb. 28, 2012).  Six months later, the Defendant and Defendant-Intervenors, including the Gonzalez Intervenors, prevailed again when

they succeeded in proving at trial that C185 had a retrogressive effect and was enacted with a discriminatory intent.  ECF No. 230 at 38.  Texas then adopted the interim Plan C235 as its permanent plan because it wanted to avoid the instability and expense of additional litigation.  *See* Bill Analysis, Tex. S.B. 4, 83d Leg., 1st C.S. (July 25, 2013), *available at* http://www.capitol.state.tx.us/tlodocs/831/analysis/pdf/SB00004F.pdf#navpanes=0 (adopted Plan C235 because "outstanding legal questions regarding [C185 and the other maps adopted in 2011] . . . undermine the stability and predictability of the electoral process in Texas . . . [and to] avoid[] further expenditure of time and money, by all parties, in conjunction with ongoing litigation regarding the . . . congressional redistricting plans").

Thus, the Gonzales Intervenors' efforts, as well as those of Defendant and the other Defendant-Intervenors, were a catalyst for Texas to adopt C235, a plan that serves the Gonzales-Intervenors' interests much better than the plan originally submitted for preclearance.

### 3. The Gonzales Intervenors' Status as Intervenors Does Not Affect their Status as Prevailing Parties

It is well established that defendant-intervenors in declaratory judgment suits under Section 5 are among those eligible for attorneys' fees.  *See, e.g.*, *Comm'rs Ct. of Medina Cnty., Tex.*, 683 F.2d at 440; *Donnell v. United States*, 682 F.2d 240, 246 (D.C. Cir. 1982).  When determining "whether the defense of the suit was a causal, necessary, or substantial factor in obtaining the result, . . . the focus of the inquiry [must] be on the <u>collective</u> accomplishments of both the named and the intervening defendants."  *Comm'rs Ct. of Medina Cnty., Tex.*, 683 F.2d at 442 (emphasis added).  "If the court finds that the record . . . fairly shows that the plaintiff's actions were in response to the opposition offered by both the named and intervening defendants in the case, . . . defendant-intervenors should be found to be prevailing parties."  *Id.*  In other words, the efforts of Defendant and Defendant-Intervenors are considered together, not

independently, when determining whether one of the Defendant-Intervenors is a prevailing party. The facts, recited above, show that the Defendant and Defendant-Intervenors success before this panel caused the Western District of Texas to adopt Plan C235 and in turn caused Texas to adopt C235 as its permanent plan.  Thus, Texas adopted Plan C235 in response to Defendant and Defendant-Intervenors' opposition to C185, and the Gonzales Intervenors are a prevailing party entitled to fees and costs.

Moreover, there can be no question that the Gonzales Intervenors contributed substantially to the Panel's decision to deny preclearance to Plan C185.  The Gonzales Intervenors diligently advocated for their particularized interests by "actively participat[ing] throughout the prosecution of the case, assum[ing] a great measure of responsibility for presenting evidence and independently prepar[ing] and submitt[ing] various legal memoranda of value to the [C]ourt." *Donnell*, 682 F.2d at 248.  The Panel even acknowledged the Gonzales Intervenors' contributions when it noted its reliance on the reports and testimony of the Gonzales Intervenors' expert Dr. Stephen Ansolabehere, whom the Court credited with presenting sound methodologies and helpful conclusions.  ECF No. 230 at 8.  And the substantial contribution of the Gonzales Intervenors is most clearly manifested in the Majority's adoption of the argument that benchmark Congressional District 25 was a minority-ability district.  ECF No. 230 at 73-88.

Far from playing a passive role in this litigation, the Gonzales Intervenors vigorously defended their interests and presented thoroughly researched legal theories, detailed expert reports, and substantive data upon which the Panel relied in part in holding that the Plan violates Section 5.  The Gonzales Intervenors are therefore prevailing parties entitled to fees under § 1973l(e).

LEGAL24617361.2

## C. The Gonzales Intervenors' Attorneys' Fees are Reasonable

The lodestar method is the proper standard for calculating reasonable attorneys' fees under 42 U.S.C. § 1973l(e). *See Donnell*, 682 F.2d at 249-53 (applying the lodestar calculation under 42 U.S.C. § 1973l(e)); *see also Comm'rs Ct. of Medina Cnty., Tex.*, 683 F.2d at 444 (remanding for calculation of fees under the standard in *Nat'l Ass'n of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319 (D.C. Cir. 1982), if the defendant-intervenor was found to be a "prevailing party").[1]  The lodestar is calculated by multiplying "the number of hours reasonably expended on the litigation . . . [by] a reasonable hourly rate." *Blum v. Stenson*, 465 U.S. 886, 888 (1984) (citing *Hensley*, 461 U.S. at 433). Nonetheless, the Panel has discretion to determine the amount of a fee award. *Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995) ("[T]he district court is expressly empowered to exercise its discretion in determining the amount of a fee award[.]").

### 1. Counsel for the Gonzales Intervenors Spent a Reasonable Number of Hours and Exercised Appropriate Billing Judgment

To demonstrate that the time spent was reasonable, a prevailing party must submit "detailed information about the hours logged and the work done." *Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1327. The submitted records must contain "contemporaneous, complete and standardized time records which accurately reflect the work done by each attorney." *Id*.

The Gonzales Intervenors have complied with these requirements. The exhibits to the attached declarations of John Devaney and Renea Hicks show all of the hours invested on the

---

[1] The attorneys' fee provision in 42 U.S.C. § 1988 was patterned upon the attorneys' fee provision in 42 U.S.C. § 1793l(e), and thus the standards governing the award of fees in both provisions are generally the same. *Hensley v. Eckerhart*, 461 U.S. 424, 433 n.7 (1983) (citations omitted); *see also Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 624 n.1 (2001) ("we have interpreted these fee-shifting provisions consistently across statutes"); *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 968 (D.C. Cir. 2004) (citing *Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 759 n.2 (1989)) (relying on case law arising under various fee-shifting statutes to determine reasonable fees). Therefore, the Gonzales Intervenors rely upon authorities addressing the standards for the award of fees under both statutes.

Gonzales Intervenors behalf. The declarations demonstrate that the Gonzales Intervenors' counsel spent a reasonable number of hours defending against preclearance and that counsel exercised reasonable billing judgment. Any hours billed by counsel not directly related to the litigation before this Panel, such as those hours related to litigation pending in the Western District of Texas, have been removed from the fee request, and Gonzales Intervenors have reduced the requested fee award by $15,000.00 to ensure that no fees spent on related matters have been inadvertently included in our request. Mr. Devaney's declaration further attests that all billing attorneys were efficient in their litigation of this case. Thus, the Gonzales Intervenors seek fees for a total of 1,246.25 hours.

The complexity of this case and the "excellent results" further warrant granting the Gonzales Intervenors an award for all hours submitted. *Hensley*, 461 U.S. at 435 ("Where a [party] has obtained excellent results, his attorney should recover a fully compensatory fee."). Because the final judgment in this case awarded the Gonzales Intervenors all relief sought—nothing short of an "excellent result"—the Panel should grant the Gonzales Intervenors an award for all their submitted hours.

### 2. The Gonzales Intervenors Seek a Reasonable Hourly Rate

The appropriate hourly rate to be awarded under § 1973l(e) is "the prevailing market rate[ ] in the relevant community, regardless of whether [the fee seeker] is represented by private or nonprofit counsel." *Blum*, 465 U.S. at 895. Congress intended that the fees awarded in federal civil rights fee shifting statutes "be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases[,] and not be reduced because the rights involved may be non-pecuniary in nature." *Id.* at 893 (quoting S. Rep. No. 94-1011, reprinted in 1976 U.S.C.C.A.N. 5908). Courts look to three factors to determine an

attorney's reasonable rate: "the attorneys' billing practices; the attorneys' skill, experience, and reputation; and the prevailing market rates in the relevant community." *Covington*, 57 F.3d at 1107. Thus, "an attorney's usual billing rate is presumptively the reasonable rate, provided that this rate is 'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Kattan v. District of Columbia*, 995 F.2d 274, 278 (D.C. Cir. 1993) (quoting *Blum*, 465 U.S. at 895-96 n.11); *see also Missouri v. Jenkins*, 491 U.S. 274, 286 (1989) ("A reasonable attorney's fee under § 1988 is one calculated on the basis of rates and practices prevailing in the relevant market . . . and one that grants the successful civil rights plaintiff a fully compensatory fee comparable to what is traditional with attorneys compensated by a fee-paying client." (citations and quotations omitted)).

Counsel for the Gonzales Intervenors have exercised billing practices in this case that are similar to those employed with other clients on similar matters and that are similar to the prevailing practices of other attorneys in this district. Counsel for the Gonzales Intervenors serve as counsel in similar voting rights cases in jurisdictions throughout the country, including *Perez v. Perry*, No. 5:11-cv-00360 (W.D. Tex.), *Favors v. Cuomo*, No. 1:11-cv-05632 (E.D.N.Y.), and *Page v. Judd*, No. 3:13-cv-00678 (E.D. Va.). In those and other matters, the Gonzales Intervenors' counsel bills by the hour, as they did in this case, and charge similar hourly rates. Thus, the billing practices of the Gonzales Intervenors' counsel are the same in this case as in other similar cases.

The Gonzales Intervenors' counsel also has considerable experience in voting rights cases and has developed a particular set of skills and a reputation for its expertise in such cases. Lead counsel in this case, John M. Devaney, has almost thirty years of litigation experience, and has represented clients in dozens of proceedings in both federal and state courts. Prior to joining

-13-

Perkins Coie, Mr. Devaney served as a trial attorney for the United States Department of Justice, Civil Rights Division, and during his time with Perkins Coie, Mr. Devaney has participated in several voting rights cases, including *Perez v. Perry*, No. 5:11-cv-00360 (W.D. Tex.), *Favors v. Cuomo*, No. 1:11-cv-05632 (E.D.N.Y.), and *Page v. Judd*, No. 3:13-cv-00678 (E.D. Va.). Mr. Devaney's typical hourly rate is reasonable in this case given his extensive experience litigating civil rights actions in federal court and his specialized knowledge and experience litigating Voting Rights Act cases.

Attorneys Marc Elias and Kevin Hamilton also contributed to the Gonzales Intervenors' defense. Mr. Elias is the Chair of the Political Law Practice of Perkins Coie, LLP, and is recognized as a national expert in political and elections law. He has been involved in redistricting litigation in more than a half-dozen states regarding the 2010 census, including Texas, Nevada, New York, Virginia, Florida, and Ohio. Mr. Elias' typical hourly rate is reasonable in this case given his specialized knowledge and experience in redistricting matters throughout the country. Mr. Hamilton is a partner at Perkins Coie, and has significant election law experience, having represented numerous clients in statewide recounts, election contests, campaign finance issues, and the administration of elections. Like Mr. Devaney and Mr. Elias, Mr. Hamilton has participated in cases in numerous states regarding the 2010 census, and his typical hourly rate is reasonable in this case given his extensive litigation experience, in particular with voting rights cases.

Renea Hicks provided further assistance to the Gonzales Intervenors. Mr. Hicks has practiced since 1977 and has served as the State Solicitor for the Texas Attorney General, as well as Special Assistant Attorney General for Texas. He has acted as counsel in well over a dozen

voting rights and redistricting cases since the late 1980s, most recently representing a group of intervenors in the trial in *Perez v. Perry*, No. 5:11-cv-00360 (W.D. Tex.).

Mr. Devaney, Mr. Elias, Mr. Hamilton, and Mr. Hicks were further assisted by various associate attorneys and paralegals, whose typical hourly rates are reasonable in this case because they are in line with the prevailing market rate of individuals with their skills and levels of experience.

The declaration of Mr. Devaney provides evidence that the rates sought in this representation are consistent with those rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. This evidence is corroborated by billing survey data tracking the rates charged by attorneys at national law firms of similar caliber to Perkins Coie. While this data tracks only average billing rates, it demonstrates that the rates sought by Gonzales Intervenors are in line with those charged by large firms in Washington, D.C. and similar markets.

This testimony and data establishes that the rates sought by the Gonzales Intervenors are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation," *Blum*, 465 U.S. at 895-96 n.11. Thus, the Gonzales Intervenors should be awarded fees at their counsels' typical hourly rates.

**D.     The Gonzales Intervenors Are Entitled to Recover Reasonable Litigation Expenses**

Section 1973l(e) allows a prevailing party to recover "reasonable litigation expenses as part of the costs." The Gonzales Intervenors seek $34,784.62 in recoverable expenses. The expenses sought are consistent with those provided for in § 1973l(e) and commonly deemed recoverable by other courts. *See, e.g.*, *Salazar v. District of Columbia*, 123 F. Supp. 2d 8, 16-17

(D.D.C. 2000); *Jenkins*, 491 U.S. at 285. A detailed account of recoverable expenses is found in Exhibit A to Mr. Devaney's declaration.

### E. The Gonzales Intervenors Are Entitled to Recover Reasonable Expert Fees

Section 1973l(e) also allows a prevailing party to recover "reasonable expert fees." *See Bone Shirt v. Hazeltine*, 524 F.3d 863, 864 (8th Cir. 2008) ("Section 6 of the [Voting Rights Act Reauthorization and Amendments Act of 2006] amended the Voting Rights Act of 1965 to allow a prevailing party to recover 'reasonable expert fees.'"). The Gonzales Intervenors seek $49,265.70 in expert fees for the work performed by Dr. Steven Ansolabehere. As the Panel acknowledged, Dr. Ansolabehere's analysis contributed to the Court's decision to deny preclearance to Plan C185. *See* ECF No. 230 at 8. Accordingly, the Gonzales Intervenors request an award of his fees, which are detailed in Exhibit A to Mr. Devaney's declaration.

### III. CONCLUSION

For the reasons set forth above and supported by the accompanying declarations and exhibits thereto, Gonzales Intervenors respectfully request that this Court approve attorneys' fees, costs, and disbursements in the amount of $597,715.60.

RESPECTFULLY SUBMITTED: December 17, 2013

/s/ John M. Devaney_____
John M. Devaney
Marc Erik Elias
Kevin J. Hamilton
Perkins Coie LLP
700 13th Street, NW, Suite 600
Washington, DC 20005-3960
(202) 654-6200 (phone)
(202) 654-6211 (fax)

**CERTIFICATE OF SERVICE**

I hereby certify that on December 17, 2013, I electronically filed the foregoing with the Clerk of the United States District Court for the District of Columbia by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

        Respectfully submitted,

        **PERKINS COIE LLP**

        By: s/ John M. Devaney_____
           John M. Devaney, Bar No. 375465
           JDevaney@perkinscoie.com
           700 Thirteenth Street, N.W., Suite 600
           Washington, D.C. 20005-3960
           Telephone: 202.654.6200
           Facsimile: 202.654-6211