**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **STATE OF TEXAS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **UNITED STATES OF AMERICA, and** ) | **Civil Action No. 11-1303 (RMC)** |
| **ERIC H. HOLDER, JR., in his official** ) | |
| **capacity as Attorney General of the** ) | |
| **United States,** ) | |
| ) | |
| **Defendants, and** ) | |
| ) | |
| **WENDY DAVIS, *et al.*,** ) | |
| ) | |
| **Defendant-Intervenors.** ) | |
| ) | |

**OPINION**

This matter presents a case study in how not to respond to a motion for attorney

fees and costs.  At issue is whether defendant-intervenors, who prevailed in Voting Rights Act

litigation before a three-judge panel, may recoup attorney fees and costs even though the

Supreme Court vacated that opinion in light of the Supreme Court's subsequent decision in a

different lawsuit that declared a section of the Voting Rights Act unconstitutional.  A quick

search of the Federal Reporter reveals the complexity of this narrow question.  Yet, rather than

engage the fee applicants, Plaintiff Texas basically ignores the arguments supporting an award of

fees and costs.  In a three-page filing entitled "Advisory," Texas trumpets the Supreme Court's

decision, expresses indignation at having to respond at all, and presumes that the motion for

attorney fees is so frivolous that Texas need not provide further briefing in opposition unless

1

requested.  Such an opposition is insufficient in this jurisdiction.  Circuit precedent and the Local

Rules of this Court provide that the failure to respond to an opposing party's arguments results in

waiver as to the unaddressed contentions, and the Court finds that Texas's "Advisory" presents

no opposition on the applicable law. Accordingly, the Court will award the requested fees and

costs.

## I.  FACTS

Following the 2010 Census, Texas redrew its State and congressional voting

districts to account for its growing population and new congressional seats, *see* U.S. Const. art. I,

§ 2, cl. 3; U.S. Const. amend. XIV, § 2, and to comply with the principle of one-person, one-

vote, *see Georgia v. Ashcroft*, 539 U.S. 461, 488 n.2 (2003) (citing *Reynolds v. Sims*, 377 U.S.

533 (1964)).  The new voting districts could not take immediate effect, however.  At the time the

redistricting plans were enacted, the State fell within the coverage formula of Section 4(b) of the

Voting Rights Act of 1965 (VRA), 42 U.S.C. §§ 1973, *et seq.*, and, therefore, was required under

Section 5 of the VRA to obtain approval, or "preclearance," of its redistricting plans from the

Attorney General of the United States or a three-judge panel of this Court, *see id.* § 1973c(a).

Texas did not seek administrative preclearance but instead filed suit in this Court on July 19,

2011.  *See* Compl. [Dkt. 1].  The lawsuit sought approval for redistricting plans the Texas

Legislature had drawn for the U.S. House of Representatives (Plan C185), the Texas House of

Representatives (Plan H283), the Texas Senate (Plan S148), and the Texas State Board of

Education.  Texas sought a declaratory judgment that all Plans complied with Section 5 of the

VRA because they neither had "the purpose nor . . . effect of denying or abridging the right to

vote on account of race, color, or [language minority group]."[1]  42 U.S.C. § 1973c(a).

---

[1] In 1975, Congress extended the VRA to cover members of language minority groups.  *See* 42

Properly convened as a three-judge panel, *id.*; 28 U.S.C. § 2284, this Court had jurisdiction pursuant to 42 U.S.C. § 1973c and 28 U.S.C. §§ 1346(a)(2), 2201. The United States opposed preclearance of Plans C185 and H283. In addition, seven parties intervened as defendants, each of whom opposed preclearance of one or more of Texas's redistricting Plans.[2] No party, however, objected to the plan for the Texas State Board of Education. Therefore, on September 22, 2011, the Court entered judgment in favor of Texas on that Plan, permitting its immediate implementation. *See* Sept. 22, 2011 Minute Order; *see also Texas*, 887 F. Supp. 2d at 138 n.1.

After denying Texas's motion for summary judgment and ordering expedited discovery, the three-judge Court conducted a bench trial over a two-week period in January 2012. The United States and Defendant-Intervenors argued against preclearance, presenting evidence at trial and submitting post-trial briefing. *Texas*, 887 F. Supp. 2d at 139. The opposition to the Plans, however, was not uniform. For instance, the United States, the Texas Latino Redistricting Task Force, and the Gonzales Intervenors all presented expert reports and testimonies concerning retrogression. *Id.* at 141. Only the Davis Intervenors, Texas NAACP Intervenors, the League of Urban Latin American Citizens, and the Texas Legislative Black Caucus argued that Plan S148 should be denied preclearance due to the retrogressive manner in

_____

U.S.C. § 1973b(f)(2); *see also id.* § 1973*l*(c)(3) (defining the terms "language minorities" and "language minority groups").

[2] The parties intervened in their capacities as "individual voters, elected state representatives, or civil rights advocacy groups." *Texas v. United States*, 887 F. Supp. 2d 133, 138 n.2 (D.D.C. 2012), *vacated and remanded*, 133 S. Ct. 2885 (2013). Specifically, they were Texas State senators and representatives from districts in the Fort Worth area (collectively, Davis Intervenors); two legislative caucuses of the Texas House of Representatives (the Mexican American Legislative Caucus and the Texas Legislative Black Caucus); a group of Hispanic and African-American voters in Texas (collectively, Gonzales Intervenors); and three organizations concerned about minority voting rights, redistricting, or voter registration (the Texas State Conference of NAACP Branches, the League of United Latin American Citizens, and the Texas Latino Redistricting Task Force). *Id.*

which the Texas Legislature had drawn State Senate District 10 (Fort Worth).[3] *See id.* at 162.

Texas presented its own expert testimony and argued vigorously for approval of all three Plans.

The upshot was a "voluminous trial record" that fleshed out the controversies. *Id.* at 139.

The three judges of this Court were not the only judicial officers wrestling with redistricting Plans C185, H283, and S148. Several parties, including many of the Defendant-Intervenors in the instant litigation, had instituted suit against Texas in the Western District of Texas under Section 2 of the VRA, 42 U.S.C. § 1973(a).[4] Before a three-judge panel in the Western District of Texas, those parties argued that Plans C185, H283, and S148 violated Section 2 because all three Plans discriminated against minority voters by diluting their voting strength in certain areas of Texas. *Perry v. Perez*, 132 S. Ct. 934, 940 (2012) (per curiam). Although the three-judge panel in Texas withheld judgment until this Court resolved the preclearance litigation, it adopted interim plans for the 2012 election because the redistricting Plans had not been precleared and the State could not use its prior voting districts, now mal-apportioned because of population growth. *See id.* The Texas court imposed a set of interim maps, which were later adjusted after the Supreme Court vacated them due to various errors not pertinent here. *See id.* at 943-44.

On August 28, 2012, this Court denied Texas's motion for declaratory judgment, finding that Plans C185, S148, and H283 did not merit preclearance because Texas had not carried its burden of showing that those Plans did "not have the purpose or effect of denying or

---

[3] These Defendant-Intervenors also argued that Plan S148 was enacted with discriminatory intent. *Id.* at 162.

[4] Section 2 provides that "[n]o voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color . . . ." 42 U.S.C. § 1973(a).

abridging the right to vote on account of race, color, or membership in a language minority group

under [S]ection 5 of [VRA]." *See Texas*, 887 F. Supp. 2d at 178.  Specifically, the Court found

that Texas had failed to overcome evidence of the retrogressive effect of Plans C185 and H283

and evidence of discriminatory purpose in enacting Plan C185 and Senate District 10 in Plan

S148.  *Id.* at 162, 178.  Throughout its Opinion, this Court made clear that it was relying on the

evidence offered at trial by all parties, including Defendant-Intervenors.

On October 19, 2012, Texas appealed this Court's decision to the Supreme Court.

Thereafter, between June 21 and 23, 2013, the Texas Legislature repealed and replaced Plans

C185, H283, and S148 with new maps.  The Texas Legislature passed three separate statutes that

redrew the State's voting districts in a manner that closely mirrored the second set of interim

plans ordered by the *Perez* Court.  *See* Davis Mot. for Fees [Dkt. 256] at 10.  The Governor of

Texas signed these new plans into law on June 26, 2013.  *Id.* at 11.

On June 25, 2013, after Texas legislative action and one day before the Governor

signed the three new redistricting plans into law, the Supreme Court issued *Shelby County v.

Holder*, 133 S. Ct. 2612 (2013).  *Shelby County* involved a constitutional challenge to Section 4

of the VRA.  The Supreme Court held that because the coverage formula in Section 4(b) was

based on stale data and distinguished among the States in an unconstitutional manner, it "can no

longer be used as a basis for subjecting jurisdictions to preclearance." *Id.* at 2631.  Then, on

June 27, 2013, one day *after* Texas replaced Plans C185, S148, and H283, the Supreme Court

vacated and remanded this Court's opinion that had denied preclearance to Texas.  The Davis

Intervenors had immediately moved in the Supreme Court for dismissal of Texas's appeal as

moot in light of the formal adoption of new voting plans by the Texas Legislature, and the

Supreme Court instructed this Court to consider both *Shelby County* and the Davis Intervenors'

"suggestion of mootness" on remand.  *Texas*, 133 S. Ct. at 2885.

On July 3, 2013, Texas moved to dismiss this lawsuit as moot in light of *Shelby County*.  *See* Pl. Mot. to Dismiss [Dkt. 239].  All Defendant-Intervenors argued against the motion, and several asked for leave to file a counterclaim against Texas under Section 3(c) of the VRA, 42 U.S.C. § 1973a(c).  The Court found that both *Shelby County* and Texas's enactment of superseding redistricting plans mooted the controversy.  *See* Dec. 3, 2013 Mem. & Order [Dkt. 255] at 4.  It also noted that dismissal of the suit as moot would not preclude Defendant-Intervenors from seeking attorney fees.  *See id.*  Accordingly, the Court granted Texas's motion to dismiss and closed the case.  On January 22, 2014, the three-judge Court dissolved itself and remanded the matter to this single judge for further proceedings.  *See* Jan. 22, 2014 Order [Dkt. 263].

The Davis Intervenors, Gonzales Intervenors, and Texas State Conference of NAACP Branches (collectively, Fee Applicants) now move for attorney fees and costs.[5]  They contend that they are prevailing parties and are entitled to fees and costs under the VRA.  The Davis Intervenors seek a total reimbursement of $466,680.36, *see* Davis Mot. for Fees at 2, the Gonzales Intervenors seek a total reimbursement of $597,715.60, *see* Gonzales Mot. for Fees [Dkt. 257] at 2, and the Texas State Conference of NAACP Branches seeks a total reimbursement of $32,374.05, *see* Texas State Conference of NAACP Branches Mot. for Fees [Dkt. 258] at 1.

Texas has not filed a brief in opposition to the pending motions.  Instead, Texas filed a three-page "Advisory" that begins and ends with *Shelby County*.  *See* Advisory [Dkt. 259].  Texas writes that, in light of *Shelby County*, the State was wrongly subjected to

---

[5] Fee Applicants timely filed their motions for attorney fees pursuant to the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 54(d)(2)(B)(i).

preclearance in the first place.  As a result, Texas contends, the participation of Defendant-Intervenors in this VRA litigation only served to "aggravat[e] the unconstitutional burden of preclearance and delay[] [Texas's] reapportionment efforts following the 2010 Census."  *Id.* at 2.  Texas adds that "[t]he only basis upon which the Intervenors could conceivably have claimed prevailing-party status" was the three-judge Court's denial of preclearance, which the Supreme Court vacated on appeal.  *Id.*  Confident in its Advisory, Texas makes no additional arguments and asserts an intention to say no more unless required to do so.  *Id.* at 3 ("*Shelby County* requires immediate denial of all motions for fees and costs, and the State does not intend to respond unless requested to do so by the Court.").

## II. ANALYSIS

The merits of the instant litigation were tried to a three-judge Court under the VRA, and that Court fulfilled its mandate when it entered its judgment.  Section 5 of the VRA requires matters to be "heard and determined by a court of three judges" only to the extent required by 28 U.S.C. § 2284, *see* 42 U.S.C. § 1973c(a).  Section 2284, in turn, permits "[a] single judge . . . [to] conduct all proceedings except the trial, and enter all orders permitted by the rules of civil procedure except as [otherwise] provided . . . ."  28 U.S.C. § 2284(b)(3).  Here, the three-judge panel fulfilled its statutory purpose.  The question of fees and costs is an ancillary matter and is properly resolved by the district court judge to whom the case was assigned initially.  *See, e.g.*, *Pub. Serv. Comm'n of Mo. v. Brashear Freight Lines, Inc.*, 312 U.S. 621, 625 (1941) (noting that a single district judge, rather than a three-judge panel, should have resolved a motion for damages that was filed after the three-judge panel had ruled on an injunction application for which the three-judge panel had been convened); *Hamilton v. Nakai*, 453 F.2d 152, 161 (9th Cir. 1971) (holding that a single judge could decide an ancillary issue because the

three-judge court had issued its judgment and therefore "had fulfilled the statutory purpose for which the two additional judges had been called"); *Allen v. Cnty. Sch. Bd. of Prince Edward Cnty., Va.*, 249 F.2d 462, 464 (4th Cir. 1957) (finding post-judgment motion requesting deadline for compliance with three-judge court's desegregation order was properly resolved by single district court judge).

Turning to the first principles of attorney fee awards, parties in the United States ordinarily bear their own attorney fees regardless of the outcome of the litigation. *Fresh Kist Produce, LLC v. Choi Corp.*, 362 F. Supp. 2d 118, 125 (D.D.C. 2005) (citing *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 602-03 (2001), *superseded in part by statute*, Open Government Act of 2007, Pub. L. No. 110-175, 121 Stat. 2524 (codified at 5 U.S.C. § 552(a)(4)(E) (2009))). There are exceptions, however, to this so-called "American Rule." For instance, the American Rule does not apply where there is an explicit statutory basis for awarding fees. *Id.* (citing *Alyeska Pipeline Serv. Co. v. The Wilderness Soc'y*, 421 U.S. 240, 257 (1975), *superseded by statute on other grounds*, Civil Rights Attorney's Fees Awards Act of 1976, Pub. L. No. 106-274, §4(d), 114 Stat. 803, 804 (codified at 42 U.S.C. § 1988(b) (2000))).

If a party establishes that it is entitled to attorney fees, then the question becomes whether the fees sought are reasonable. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), *abrogated on other grounds by Gisbrecht v. Barnhart*, 535 U.S. 789, 795-805 (2002). The standard metric for determining the reasonableness of a fee request is the "lodestar method." [6] As discussed *infra*, such a calculation "produces an award that *roughly* approximates the fee that

---

[6] The "lodestar" approach to fee awards was established by the Supreme Court in *Hensley*, and is the approach followed by the federal courts in most fee award disputes. *See Gisbrecht*, 535 U.S. at 802.

the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010).

### A.  Fee Applicants' Entitlement to Fees and Costs

Fee Applicants contend that statutory fee shifting provisions apply here. Specifically, they seek attorney fees under § 1973*l*(e) of the VRA, 42 U.S.C. § 1973*l*(e), and subsection (b) of 42 U.S.C. § 1988.  Both provisions contain similar language and identical legislative purposes.  *See Donnell v. United States*, 682 F.2d 240, 245 n.7 (D.C. Cir. 1982).  The former states that "[i]n any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, reasonable expert fees, and other reasonable litigation expenses as part of the costs," 42 U.S.C. § 1973*l*(e), while the latter permits a court, "in its discretion, . . . [to] allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs," 42 U.S.C. § 1988(b).  Both provisions are designed to "encourag[e] private litigants to act as 'private attorneys general' in seeking to vindicate the civil rights laws."  *Donnell*, 682 F.2d at 245.  As a result, the two provisions are construed alike.  *Id.* at 245 n.7 (citing *Riddell v. Nat'l Democratic Party*, 624 F.2d 539, 543 (5th Cir. 1980)); *see also Buckhannon*, 532 U.S. at 603 n.4 (recognizing that § 1973*l*(e) and § 1988(b) have been interpreted in a consistent manner).

Requests for attorney fees pursuant to § 1973*l*(e) and § 1988(b) generally implicate two questions of law.  The first is whether the party seeking recovery of attorney fees is a prevailing party.  If so, then a fee award ordinarily should be granted.  *See, e.g.*, *Blanchard v. Bergeron*, 489 U.S. 87, 89 n.1 (1989) (observing that a party that prevails in § 1988 litigation

"ordinarily" is entitled to attorney fees (internal quotations and citation omitted)); *Donnell*, 682

F.2d at 245 ("[T]he legislative history [of § 1973*l*(e)] makes clear that a prevailing party usually

should recover fees."). The second is whether a court should exercise its discretion *not* to award

attorney fees because there are "special circumstances [that] would render such an award unjust."

*Newman v. Piggie Park Enters.*, 390 U.S. 400, 402 (1968).

### 1. Prevailing Party Precedent

The phrase "prevailing party" is a legal term of art, *Buckhannon*, 532 U.S. at 603,

which has been addressed by the Supreme Court in multiple decisions. *See, e.g.*, *Tex. State*

*Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791 (1989) ("A prevailing party must

be one who has succeeded on any significant claim affording it some of the relief sought, either

*pendent lite* or at the conclusion of the litigation."); *Hewitt v. Helms*, 482 U.S. 755, 760 (1987)

("[P]laintiff [must] receive at least some relief on the merits of his claim before he can be said to

prevail."). The Supreme Court most recently grappled with the concept in *Buckhannon*. There,

interpreting the fee-shifting provisions of the Fair Housing Amendments Act of 1988, 42 U.S.C.

§ 3613(c)(2), and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12205,[7] the Supreme

Court explained that a prevailing party is "one who has been awarded some relief by the court,"

*Buckhannon*, 532 U.S. at 603, resulting in a "judicially sanctioned change in the legal

relationship of the parties," *id.* at 605.

Buckhannon* excluded from its definition instances in which the objective of a

lawsuit is achieved because a defendant voluntarily changes its conduct. Terming it the "catalyst

---

[7] The fee-shifting provisions of the Fair Housing Amendment Act and the Americans with Disabilities Act are similar to 42 U.S.C. § 1973*l*(e) and 42 U.S.C. § 1988(b). The Fair Housing Amendments Act provides that "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee and costs", 42 U.S.C. § 3613(c)(2), while the Americans with Disabilities Act states that "the court . . . , in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses and costs," 42 U.S.C. § 12205.

theory" of fees recovery, *id.* at 601, the Supreme Court reasoned that such a basis for recovery is not connected to the clear meaning of "prevailing party," *id.* at 605.  Neither the legislative history of similar fee-shifting provisions, such as the Civil Rights Attorney's Fee Awards Act, *id.* at 607, nor the Court's precedents supported a "holding that the term 'prevailing party' authorizes an award of attorney's fees *without* a corresponding alteration in the legal relationship of the parties," *id.* at 605.  Even more troublesome to the Supreme Court was the fact that the catalyst theory permits litigants to recover attorney fees for "nonfrivolous but nonetheless potentially meritless lawsuit[s]."  *Id.* at 606.  Not only are such recoveries without "the necessary judicial *imprimatur*," *id.* at 605, but they discourage voluntary changes in conduct, *id.* at 608.  Accordingly, the Supreme Court held that voluntary changes in conduct disassociated from judicial action are similar to a "reversal of a directed verdict," a finding of constitutional infirmity "unaccompanied by judicial relief," and other nonjudicial modifications of actual conditions, none of which permits recovery of attorney fees.[8]  *Id.* at 605-06 (internal quotations and citations omitted).

Since *Buckhannon*, the D.C. Circuit has adopted a three-part test for adjudicating prevailing-party status.  Prevailing-party status turns on whether there is "(1) . . . a court-ordered change in the legal relationship of the parties; (2) [a] judgment . . . in favor of the party seeking the fees; and (3) [a] judicial pronouncement . . . accompanied by judicial relief."  *Green Aviation Mgmt. Co. v. FAA*, 676 F.3d 200, 203 (D.C. Cir. 2012) (internal quotation marks and citation omitted).  Markedly, only the latter two prongs are relevant when a defendant is the party

---

[8] Through the Open Government Act of 2007, Congress superseded *Buckhannon* and reinstated the catalyst theory of attorney fee recovery only for fee awards under the Freedom of Information Act, 5 U.S.C. § 552.  *See Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 525 (D.C. Cir. 2011).

seeking attorney fees.[9]  *Id.* at 204.

Buckhannon expressly recognized only two appropriate bases for awarding attorney fees—judgments on the merits and settlements enforced through consent decrees. *Buckhannon*, 532 U.S. at 605 ("We have only awarded attorney's fees where the plaintiff has received a judgment on the merits, or obtained a court-ordered consent decree." (internal citations omitted)).  Prevailing-party status in this jurisdiction, however, is not so limited.  Under the D.C. Circuit's construction of *Buckhannon*, a litigant in this jurisdiction need only establish that s/he received "some form of judicial relief, not necessarily a court-ordered consent decree or a judgment on the merits." *Turner v. Nat'l Transp. Safety Bd.*, 608 F.3d 12, 15 (D.C. Cir. 2010).  The D.C. Circuit has recognized that, under certain circumstances, prevailing-party status may result from a favorable jurisdictional ruling, a grant of preliminary injunction, or even a judicially-sanctioned stipulation.  *Id.* (citing with approval *District of Columbia v. Jeppsen ex rel. Jeppsen*, 514 F.3d 1287, 1290 (D.C. Cir. 2008); *Select Milk Producers, Inc. v. Johanns*, 400 F.3d 939, 945 (D.C. Cir. 2005); *Carbonell v. INS*, 429 F.3d 894, 895-96, 899 (9th Cir. 2005)).

## 2.  Fee Applicants' Arguments

Although each Fee Applicant moves separately for attorney fees, their arguments

---

[9] In *Oil, Chemical, & Atomic Workers International Union v. Department of Energy*, 288 F.3d 452 (D.C. Cir. 2002), *superseded by statute on other grounds*, Open Government Act of 2007, Pub. L. No. 110-175, 121 Stat. 2524, *as recognized in Summers v. Department of Justice*, 569 F.3d 500, 503 (D.C. Cir. 2009), the D.C. Circuit ruled that when interpreting a fee-shifting provision courts should give the phrase "prevailing party" the same construction as it does in other fee-shifting provisions "unless there is some good reason for doing otherwise," *id.* at 455. Overcoming this presumption is difficult. *Green Aviation*, 676 F.3d at 202 (explaining that this Circuit "has joined other circuits in acknowledging that the burden of establishing good reason not to apply *Buckhannon* is not easily met" (internal alterations, citation, and quotations omitted)).  Neither Texas nor the Fee Applicants argue that *Buckhannon* should not control the meaning of "prevailing party" in 42 U.S.C. § 1973*l*(e) or 42 U.S.C. § 1988(b).

for prevailing-party status largely overlap and can be summarized.[10]  Fee Applicants state that

they joined the litigation to oppose preclearance for Plans C185, H283, and/or S148.  This Court

first denied preclearance to Texas on summary judgment, with the result that the District Court in

the Western District of Texas imposed interim maps that re-drew some voting districts.

Following a trial before this Court at which all parties presented demonstrative evidence, expert

reports, and testimony, the Court found that Plans C185, H283, and S148 violated the VRA.  It,

therefore, denied preclearance.  Fee Applicants argue that this result was enshrined into law in

June 2013, when Texas repealed Plans C185, H283, and S148 and enacted new redistricting

plans that were substantially similar to the interim maps drawn by the three-judge panel in Texas.

Because Texas never used Plans C185, H283, or S148 for any actual voting (primary or general

election) and all Plans were rejected by the Court and replaced by Texas, Fee Applicants contend

that they achieved not just *some* judicial relief, but rather, *all* of the relief that they sought.

Outraged that Fee Applicants would dare to request fees, Texas responds with its

Advisory.  Texas posits that the three-judge Court's denial of preclearance is "[t]he only basis

upon which the intervenors could conceivably . . . claim[] prevailing-party status," Advisory at 2,

but that the decision does not support a fee award because it "was vacated on appeal," *id.*  Texas

---

[10] Unlike the Davis Intervenors and the Texas State Conference of NAACP Branches, the
Gonzales Intervenors rely primarily on *Commissioners Court of Medina County, Texas v. United
States*, 683 F.2d 435 (D.C. Cir. 1982), in arguing their prevailing-party status.  The Gonzales
Intervenors contend that a judgment denying preclearance gives rise to a presumption that any
defendants who intervened are prevailing parties.  Further, the Gonzales Intervenors argue that,
even without such a presumption, they fit within *Medina County*'s two-prong test for
determining prevailing-party status.  *Medina County*, however, is a "catalyst theory" fee award
case that predates *Buckhannon*.  *See* 683 F.2d at 440 (describing the applicable test for prevailing
party status as whether "the party . . . substantially received the relief sought, and . . . [whether]
the lawsuit . . . [was] a *catalytic, necessary, or substantial factor in attaining the relief*"
(emphasis added)).  Although neither the Supreme Court nor the D.C. Circuit has overruled
*Medina County* explicitly, its continuing validity in light of *Buckhannon* is uncertain, and here,
immaterial to the Court's determination of Fee Applicants' prevailing-party status.

asserts that *Shelby County* must be given full retroactive effect and this Court has no choice but to deny Fee Applicants' motions for attorney fees. *Id.* at 2-3 (citing *Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97 (1993); *Landsgraf v. USI Film Prods.*, 511 U.S. 244, 279 n.32 (1994)).

### 3.  Fee Applicants Are Prevailing Parties

The Advisory filed by Texas has narrowed the dispute greatly.  Texas rests entirely on *Shelby County*.  Its sole contention is that the Supreme Court, as a matter of fact and law, erased the three-judge Court's opinion, and, consequently, Fee Applicants' successes before that Court.  In essence, Texas believes that *Shelby County* establishes that the entirety of the preclearance process, including this Court's denial of preclearance, was a constitutional "affront" and nullity.  In short, Texas points to *Shelby County* and declares checkmate.  Texas does not address Defendant-Intervenors' argument that they achieved the relief they sought because Texas discarded the challenged Plans and adopted different redistricting plans.

In fixating on *Shelby County*, Texas blinds itself to the procedures of this Court. The Local Rules of the Court provide that:

> Within 14 days of the date of service or at such other time as the Court may direct, an opposing party shall serve a memorandum of points and authorities in opposition to the motion.  If such a memorandum is not filed within the prescribed time, the court may treat the motion as conceded.

D.D.C. Local Civil Rule 7(b).  This Rule "is a docket-management tool that facilitates efficient and effective resolution of motions by joining of issues." *Fox v. Am. Airlines, Inc.*, 389 F.3d 1291, 1294 (D.C. Cir. 2004).  It applies not only to instances where a litigant entirely fails to oppose a motion but also where a party files an opposition that addresses only *some* of the arguments raised in the underlying motion.  In the latter instance, it is well-established that courts may deem the unaddressed arguments as conceded.  *See Hopkins v. Women's Div., Gen.*

*Bd. of Global Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) ("It is well understood in this Circuit that when a [non-movant] files an opposition to a motion . . . addressing only certain arguments raised by the [movant], a court may treat those arguments that the [non-movant] failed to address as conceded." (citing *FDIC v. Bender*, 127 F.3d 58, 67-68 (D.C. Cir. 1997))); *CSX Transp., Inc. v. Commercial Union Ins., Co.*, 82 F.3d 478, 482-83 (D.C. Cir. 1996); *see also Twelve John Does v. District of Columbia*, 117 F.3d 571, 577 (D.C. Cir. 1997) (explaining that the Circuit "honors . . . [a district court's] enforcement of the rule" that "absence of a response [is] . . . a basis for treating the motion as conceded").

Texas does not dispute that Fee Applicants were prevailing parties prior to the Supreme Court's issuance of *Shelby County* and subsequent vacatur and remand of this Court's opinion denying preclearance.  Notably, this Circuit has found that parties who intervene as defendants in VRA litigation are eligible for fee awards,[11] *see Medina Cnty.*, 683 F.2d at 440; *Donnell*, 682 F.2d at 246, and Fee Applicants contend that the three-judge Court's denial of preclearance rendered them prevailing parties under *Buckhannon*, as interpreted by the D.C. Circuit.  Texas makes no argument whatsoever that *Shelby County* upended the eligibility of Fee

---

[11] Judge John D. Bates recently denied Shelby County's motion for attorney fees, finding that its (ultimately successful) lawsuit was at odds with the policy rationale of the VRA's fee-shifting provision.  *Shelby Cnty. v. Holder* (*Shelby Cnty. II*), Civ. No. 10-651, 2014 WL 2200898, at *10 (D.D.C. May 28, 2014).  Assuming that Shelby County's lawsuit was the "sort of action or proceeding" for which § 1973*l*(e) permits attorney fee awards, *id.* (internal quotations omitted), Judge Bates determined that the County was not entitled to fees under the "demanding . . . standard" set forth in *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978), *Shelby Cnty. II*, 2014 WL 2200898, at *10.  Judge Bates opined that "the purpose of section 1973*l*(e) is to encourage private attorneys general to bring lawsuits vindicating individual voting rights," *id.*, whereas Shelby County's suit sought to undermine VRA rights, *id.* at *16 (citing *Christiansburg*, 434 U.S. at 418).

  Judge Bates' opinion is inapposite to the facts of this case.  Fee Applicants intervened, in the manner of private attorneys general, to protect core rights established under the VRA prior to the Supreme Court's issuance of *Shelby County*.  As the analysis in the text demonstrates, Fee Applicants were successful in preventing Texas's use of redistricting Plans C185, H283, and S148 and the State adopted three new redistricting plans for elections subsequent to June 2013.

Applicants for fee awards, the applicability of *Buckhannon*, or the prevailing-party status of Fee

Applicants at the time the Court denied preclearance to Texas and thereafter, when Texas

enacted new redistricting maps.  Thus, the Court finds that Texas has waived any argument as to

these issues.

   Having conceded that Fee Applicants were prevailing parties prior to *Shelby*

*County*, Texas's only argument against an award of fees and costs here is that *Shelby County*

effectively stripped Fee Applicants of their victory.  Texas's opposition, however, overlooks

*National Black Police Association v. District of Columbia Board of Elections & Ethics*, 168 F.3d

525 (D.C. Cir. 1999) and *Grano v. Barry*, 783 F.2d 1104 (D.C. Cir. 1986).  In *National Black*

*Police Association*, various plaintiffs sought an injunction against campaign contribution limits

for certain local elections.  168 F.3d at 526-27.  The district court enjoined the initiative as

violative of the First Amendment, and fifty-two days later, the D.C. City Council repealed the

challenged contribution limits.  *Id.* at 527.  On appeal, the D.C. Circuit deemed the matter moot

in light of the Council's repeal and vacated the district court's judgment.  The district court then

awarded attorney fees to plaintiffs, holding that "despite the eventual mootness of the case . . . .

the injunction changed the legal relationship of the parties, and contributors were able to make

substantial contributions that otherwise would not have been legal."  *Id.*  The D.C. Circuit

agreed.  "The fact that the case was moot by the time of the appeal [did] not alter the fact that the

injunction altered the legal relationship between the parties when it was issued . . . ."  *Id.* at 528.

It was of no moment to the D.C. Circuit that the plaintiffs would have realized their goal fifty-

two days later when the Council repealed the initiative.  "The plaintiffs secured a real-world

vindication of their First Amendment rights" regardless of subsequent events.  *Id.*  Accordingly,

the "district court properly found that the plaintiffs were prevailing parties because at the time

judgment was entered, the injunction altered the legal relationship between the parties." *Id.* at 529.

Similarly, in *Grano*, plaintiffs obtained an injunction that delayed the demolition of an historical site pending a public referendum. 783 F.2d at 1107-08. The D.C. Circuit affirmed the district court's finding that the plaintiffs were prevailing parties despite the fact that the vote to preserve the site was invalidated. *Id.* at 1109. The Circuit reasoned that the public referendum would have had no chance to preserve the building at all if the building were razed before the election. In other words, the *Grano* plaintiffs "faced two hurdles[:] [t]hey successfully surmounted the first by holding off the demolition until the election . . . . [and] [a]lthough their goal of ensuring that the result of the election would have legal effect was subsequently blocked in another court, they nonetheless succeeded in the aspect of their claims that brought them into federal court . . . ." *Id.* Significantly, the D.C. Circuit subsequently has observed that "[t]he injunction [in *Grano*] produced a lasting change in the parties' legal circumstances and gave the plaintiffs the precise relief that they had sought." *Thomas v. Nat'l Sci. Found.*, 330 F.3d 486, 493 (D.C. Cir. 2003).

Here, Texas does not dispute that this Court's denial of preclearance altered the legal relationship between it and Fee Applicants. Nor does Texas dispute that on June 26, 2013, it repealed the very voting maps for which it had sought preclearance and replaced them with redistricting maps that were substantially similar to the voting districts ordered by the District Court in Texas. Although the Supreme Court ultimately vacated this Court's opinion, neither *Shelby County* nor the vacatur erased the real-world vindication that Fee Applicants had achieved. In line with this Circuit's precedents and those in other courts of appeals, the Court finds that Defendant-Intervenors did not lose prevailing-party status due to subsequent mootness.

*See Thomas*, 330 F.3d at 493; *Nat'l Black Police Ass'n*, 168 F.3d at 528; *Grano*, 783 F.2d at 1108-09; *see also Thomas v. Bryant*, 614 F.3d 1288, 1294 (11th Cir. 2010) ("[W]hen plaintiffs clearly succeeded in obtaining the relief sought before the district court and an intervening event rendered the case moot on appeal, plaintiffs are still 'prevailing parties' for the purposes of attorney's fees for the district court litigation." (quoting *Diffenderfer v. Gomez-Colon*, 587 F.3d 445, 454 (1st Cir. 2009) (internal quotation marks omitted))); *Palmer v. City of Chicago*, 806 F.2d 1316, 1321 (7th Cir. 1986) (assuming without deciding that it is possible for a party to "win" even though "after some relief has been obtained[,] the case becomes moot—is in effect interrupted before it can reach its normal conclusion (unless the [prevailing party] caused it to become moot)"); *cf. UFO Chuting of Haw., Inc. v. Smith*, 508 F.3d 1189, 1197 (9th Cir. 2007) ("[W]hen 'a party . . . achieves the objective of its suit by means of an injunction issued by the district court[, it] is a prevailing party in that court, notwithstanding the fact that the case becomes moot, through no acquiescence by the defendant, while the order is on appeal.'" (quoting *Dahlem v. Bd. of Educ. of Denver Pub. Sch.*, 901 F.2d 1508, 1512 (10th Cir. 1990))).

This result is not inconsistent with the analysis in *Lewis v. Continental Bank Corp.*, 494 U.S. 472 (1990). *Lewis* involved two Florida statutes that prohibited an out-of-state holding company from operating an industrial savings bank in Florida. Continental Bank challenged the statutes as unconstitutional under the Commerce Clause, U.S. Const., Art. I, § 8, cl. 3, and sought an injunction to order the State Comptroller to process its application for an industrial savings bank. *Lewis*, 494 U.S. at 475. The district court granted the relief requested, and Florida then amended the statutes, which materially altered the legal landscape. *Id.* Florida moved to amend the district court judgment on the grounds of mootness and Continental Bank moved for attorney fees under 42 U.S.C. § 1988. The district court denied both motions. *Id.*

On appeal, the Eleventh Circuit found that the case was not moot, affirmed the lower court decision on different grounds, and remanded for further analysis on the fee petition. *Id.* at 476.  Shortly before the Eleventh Circuit decision issued, however, Congress adopted the Competitive Equality Amendments Act of 1987, Pub. L. No. 100-86, 101 Stat. 552, which expanded the definition of "bank" and distinctly mooted the Continental Bank lawsuit.  *Lewis*, 494 U.S. at 476.  Florida petitioned the Eleventh Circuit for rehearing, but the Circuit denied the request, awarded attorney fees, and remanded to the district court to calculate the award.  *Id.* at 476-77.

The Supreme Court granted *certiorari* to Florida and held that the federal legislation had mooted the case.  *Id.* at 477-80.  It found that Continental Bank no longer had any "stake in the outcome" because of changes in the law.  *Id.* at 478.  As to any fee recovery, the Supreme Court observed that "[s]ince the judgment below [was] vacated on the basis of an event that mooted the controversy before the Court of Appeals' judgment issued, Continental was not, *at that stage*, a 'prevailing party' as it must be to recover fees under § 1988."  *Id.* at 483 (emphasis added).  It added, "[w]hether Continental [could] be deemed a 'prevailing party' in the District Court, even though its judgment was mooted after being rendered but before the losing party could challenge its validity on appeal, is a question of some difficultly that . . . . [w]e decline to resolve . . . . as well as the related question whether  . . . fees are available in a Commerce Clause challenge."  *Id.* (citation omitted).

As the Ninth Circuit has since observed, *Lewis* "did not hold that a party automatically loses its prevailing party status when the appeal becomes moot before a Court of Appeals reaches final judgment."  *UFO Chuting*, 508 F.3d at 1197 n.8.  "Rather, [it] . . . reaffirmed established case law requiring a prevailing party to obtain a direct and

substantial benefit." *Id.* Fee Applicants obtained a direct and substantial benefit as well: redistricting Plans C185, H283, and S148 were never implemented; Texas repealed the challenged Plans and adopted new plans; and the Governor formally executed the legislation replacing the Plans one day *before* the Supreme Court vacated and remanded this Court's denial of preclearance. Given this timing of events, *Shelby County* did not strip Defendant-Intervenors of their rights to seek fees. This conclusion is consistent with *Lewis* and follows the law of the D.C. Circuit and other courts of appeals that have found that subsequent mootness does not necessarily obviate a litigant's prevailing-party status.

### 4. Absence of Special Circumstances

Having found Fee Applicants are prevailing parties, the Court turns to whether special circumstances would render an award unjust. This question requires an evaluation of several factors. One consideration is "whether the net result is [such] . . . that it would be stretching the imagination to consider the result a 'victory' in the sense of vindicating the rights of the fee claimants." *Medina Cnty.*, 683 F.2d at 442-43. "If the victory can fairly be said to be only a pyrrhic one, then an award of fees would presumably be inappropriate." *Id.* at 443. A related consideration is the impact that the party seeking attorney fees had on the litigation. Where fee applicants are intervenors, a court considers whether they timely intervened,[12] whether their participation was necessary to protect their interests and further the policies embodied in the relevant statutory scheme, *Miller*, 706 F.2d at 343, and whether they had an "independent impact on the particular outcome of the case," *Medina Cnty.*, 683 F.2d at 443.

---

[12] The D.C. Circuit has noted that the analysis of the contributions of an intervenor, for purposes of attorney fees, is akin to the analysis that is conducted when intervention is first sought. Accordingly, "the District Court should not reevaluate its decision on this issue unless new evidence has arisen." *Miller v. Staats*, 706 F.2d 336, 343 n.40 (D.C. Cir. 1983) (citing *Medina Cnty.*, 683 F.2d at 443).

The "special circumstances" exception to an award of fees is a gloss on § 1973*l*(e) and § 1988. That is, the exception is "a judicially created concept, not mentioned in any of the fee award statutes." *Maloney v. City of Marietta*, 822 F.2d 1023, 1027 (11th Cir. 1987). As a result, the exception is "narrowly construed so as not to interfere with the congressional purpose in passing [fee-shifting] statutes." *Martin v. Heckler*, 773 F.2d 1145, 1150 (11th Cir. 1985) (en banc), *abrogated on other grounds by Tex. State Teachers Ass'n*, 489 U.S. 782.

Fee Applicants set forth in detail the efforts that they undertook to oppose Plans C185, H283, and S148. They explain the necessity of their intervention, describe the resources that they expended at every stage in the proceedings, and recount the witnesses and evidence that they presented at trial. Texas makes no effort to rebut Fee Applicants' facts or arguments. Accordingly, the Court finds no special circumstances and that Texas concedes there are no special circumstances that would render an award of attorney fees to Fee Applicants unjust.[13] *See CSX Transp., Inc.*, 82 F.3d at 482-83; *Hopkins*, 238 F. Supp. 2d at 178.

**B. Reasonableness of Defendant-Intervenors' Request**

In this Circuit, "[t]he usual method of calculating reasonable attorney's fees is to multiply the hours reasonably expended in the litigation by a reasonable hourly fee, producing the 'lodestar' amount." *Bd. of Trs. of Hotel & Rest. Emps. Local 25 v. JPR, Inc.*, 136 F.3d 794, 801 (D.C. Cir. 1998). A fee applicant bears the burden of demonstrating that the claimed rate and number of hours are reasonable. *Blum v. Stenson*, 465 U.S. 886, 897 (1984); *Covington v.*

---

[13] Fee Applicants also argue an alternate theory of prevailing-party status, *i.e.*, because this three-judge Court denied summary judgment to Texas, the *Perez* Court imposed interim redistricting maps and Fee Applicants may recover fees and costs in this Court. Fee Applicants reason that "[n]othing in *Buckhannon* requires that the judicial relief relied upon for prevailing party status be received in the same case in which fees are sought . . . ." Davis Mot. for Fees at 21. In light of Fee Applicants' significant participation in this case and Texas's concessions, the Court has no need to rule on this argument.

*District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995).

Fee applications must "include contemporaneous time records of hours worked and rates claimed, plus a detailed description of the subject matter of the work with supporting documents, if any." *In re Donovan*, 877 F.2d 982, 994 (D.C. Cir. 1989). A fee applicant may satisfy its burden of demonstrating that its time was reasonably spent by submitting "'sufficiently detailed information about the hours logged and the work done' that permits the district court to 'make an independent determination whether or not the hours claimed are justified.'" *Cobell v. Norton*, 231 F. Supp. 2d 295, 305 (D.D.C. 2002) (quoting *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982)). The applicant need not, however, "present the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney." *Id.* at 306. Billing descriptions can be read in context, with clarification coming from surrounding billing entries as well as the docket. *Heard v. District of Columbia*, Civ. No. 02–296, 2006 WL 2568013, at *14-15 (D.D.C. Sept. 5, 2006).

The Court need not tarry long on the reasonableness of the fees sought because Texas has presented no argument contesting any aspect of them. Fee Applicants have submitted sufficiently detailed information about the hours their attorneys spent working on this matter as well as the specific work performed. *See* Davis Mot. for Fees at 24-35; *Id.*, Exs. A-L; Gonzales Mot. for Fees at 11-15; *Id.*, Decl. of John Devaney [Dkt. 257-3], Exs. A-C; *Id.*, Decl. of Renea Hicks [Dkt. 257-7], Ex. A; Texas State Conference of NAACP Branches Mot. for Fees at 2-3; *Id.*, Ex [Dkt. 258-1]. Further, they have adequately explained the hourly rates of their attorneys. Because Texas makes no argument whatsoever in opposition, the Court finds that Texas concedes the reasonableness of the attorney fees that Fee Applicants seek. *See CSX Transp., Inc.*, 82 F.3d at 482-83; *Hopkins*, 238 F. Supp. 2d at 178.

The Court likewise easily finds that Fee Applicants are entitled to recover the litigation costs that they request.  *See* Davis Mot. for Fees at 36-37; *Id.*, Ex. M; Gonzales Mot. for Fees at 15-16; Texas State Conference of NAACP Branches Mot. for Fees at 3.  Section 1973*l*(e) of the VRA explicitly permits prevailing parties to recoup costs.  *See* 42 U.S.C. § 1973*l*(e) ("In any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment, the court, in its discretion, may allow the prevailing party, other than the United States, . . . reasonable expert fees[] and other reasonable litigation expenses as part of the costs.").  Texas mounts no challenge to the categories or amounts for which Defendant-Intervenors seek recovery.  Nor does Texas argue that such an award would be unreasonable.  Accordingly, the Court finds that Texas also concedes the reasonableness of the costs and experts fees that Fee Applicants seek.  *See CSX Transp., Inc.*, 82 F.3d at 482-83; *Hopkins*, 238 F. Supp. 2d at 178.

### III. CONCLUSION

The Advisory submitted by the State of Texas fails to recognize that the limited holding of *Shelby County* did not resolve the issues here.  The Advisory entirely ignores the legal arguments raised by Fee Applicants concerning their rights as prevailing parties.  Confident in its position, Texas informs the Court that it will not further "respond unless requested to do so." Advisory at 3.  The onus, however, is not on the Court to request opposition from a sophisticated party before rendering its decision.  Texas has had every chance to oppose the fees and costs that Fee Applicants seek since the applications.  It instead opted to file a three-page Advisory that ignored every argument of Fee Applicants except the applicability of *Shelby County*.

In accord with the precedents of this Circuit and others, the Court finds that Fee Applicants are prevailing parties before this Court and eligible to recover attorney fees and costs.

The Court further finds that the fees and costs they seek are uncontested and reasonable.  The

Court will award $466,680.36 to the Davis Intervenors, $597,715.60 to the Gonzales Intervenors,

and $32,374.05 to the Texas State Conference of NAACP Branches.  A memorializing Order

accompanies this Opinion.


                                            _____/s/_____
                                            ROSEMARY M. COLLYER
Date: June 18, 2014                         United States District Judge